## IN THE

# SUPREME COURT

### OF THE

## STATE OF IDAHO.

(April 3, 1920.)

WILLIAM KINZELL, Respondent, v. CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY, a
Corporation, Appellant.

[190 Pac. 255.]

CERTIORARI TO SUPREME COURT OF THE UNITED STATES—REVIEW, SCOPE
OF—STATE COURT—REMITTITUR TO—ERRORS UNDECIDED—REVIEW
OF — EVIDENCE — CONFLICT — QUESTION FOR JURY — ASSUMPTION OF
RISK — CONTRIBUTORY NEGLIGENCE — INSTRUCTIONS — FELLOW-
SERVANT DOCTRINE—FEDERAL EMPLOYERS' LIABILITY ACT—EFFECT
OF — NEGLIGENCE — EXPERIMENTAL EVIDENCE — EXPOSURE OF PER-
SON IN PRESENCE OF JURY—REOPENING CASE—DISCRETION—DAM-
AGES—VERDICT.

1. The jurisdiction of the supreme court of the United States
to review the proceedings of state courts is not that of a general
reviewing court, but is limited to specific instances of denials of
federal rights or federal questions involved.

2. Assignments of error which involve no federal question cannot
be reviewed by the supreme court of the United States under the
Judicial Code, sec. 237.

3. Where a state court has declined to rule on errors properly
assigned upon the theory that the decision of the federal question in-
volved disposes of the case, and the cause on *certiorari* to the su-
preme court of the United States is reversed and remanded for
further proceedings not inconsistent with the decision of the latter
court, the former court should dispose of the errors so left un-
decided.

Points Decided.

4. When the evidence is conflicting upon any issue of fact, such issue should be determined by the jury.

5. An employee working on a dozer assumes the risk of a coupling made by a work train at the usual and customary speed, but he does not assume the additional risk of a coupling negligently attempted at an unusual and excessive rate of speed, for he has the right to assume that the coupling will be made at the usual rate of speed, and if a coupling is attempted at an excessive rate of speed, he is not in a position to exercise any choice in the matter.

6. An employee working upon a dozer assumes the risk involved in the use, in the customary manner, of such safety appliances as are usually and generally furnished for the use of his fellow-servants, but he does not assume the additional risk entailed by the omission of such a customary appliance where he has no previous notice of such omission, for he is placed in a position where he has no choice in the matter.

7. Even though the trial court should err in refusing a requested instruction, such refusal does not require the reversal of the judgment where the jury by a specific finding of fact distinctly negatived the hypothesis upon which alone the instruction was based.

8. Under the federal employers' liability act the fellow-servant doctrine no longer obtains, but the employer is liable to the employee for injuries caused by the negligence of other employees when acting within the scope of their employment.

9. It is a part of the trainmen's duties when moving a work train toward a dozer for the purpose of coupling thereto to keep a lookout in the direction in which they are going, to reduce the speed so that when attempting to couple the train shall not strike the dozer with great or unusual force or violence, and an omission to observe this duty is negligence.

10. The propriety of permitting a party to reopen his case rests in the sound discretion of the trial court.

11. *Held,* that in view of the sharp conflict in the evidence upon the questions to which the experimental evidence was directed, the trial court did not abuse its discretion in permitting respondent to reopen his case.

12. In an action for damages for personal injuries, brought by the injured employee himself, under the federal employers' liability

8. On abrogation of fellow-servant doctrine by federal employers' liability acts, see notes in 10 Ann. Cas. 1113; Ann. Cas. 1916D, 268; 47 L. R. A., N. S., 60, and L. R. A. 1915C, 65.

12. As to damages recoverable under federal employers' liability act, see notes in Ann. Cas. 1914C, 181; Ann. Cas. 1915D, 319.

act, the jury may take into consideration in assessing the damages his pain and suffering, his mental anguish, the bodily injury sustained by him, his pecuniary loss, his loss of power and capacity for work and its effect upon his future.

13. *Held,* that the judgment is excessive, and must be reduced from $35,000 to $25,000, and unless plaintiff consents to such reduction of the judgment, a new trial is granted.

APPEAL from the District Court of the First Judicial District, for Shoshone County.   Hon. William W. Woods, Judge.

Action for damages for personal injuries.   Judgment for plaintiff.   *Modified and affirmed conditionally.*

Geo. W. Korte and Robert H. Elder, for Appellant.

It becomes the duty of this court, under the mandate of the federal supreme court, to proceed to determine all the remaining questions reserved and raised by the defendant's assignments of error.   (*Ettor v. Tacoma,* 77 Wash. 267, 137 Pac. 820; *In re Sanford Fork & Tool Co.,* 160 U. S. 247, 16 Sup. Ct. 291, 40 L. ed. 414, see, also, Rose's U. S. Notes.)

The charge that the speed of the train was more than four miles an hour was not sustained.   Eight unimpeached railroad men proved that the speed of the train did not exceed four miles an hour when making the coupling.   Plaintiff and his one witness proved nothing except that there was a severe jolt and plaintiff alone was knocked from the car. This did not sustain the specific charge of negligence. (*Southern Ry. Co. v. Gray,* 241 U. S. 333, 36 Sup. Ct. 558, 60 L. ed. 1030; *Great Northern Ry. Co. v. Wiles,* 240 U. S. 444, 36 Sup. Ct. 406, 60 L. ed. 732, see, also, Rose's U. S. Notes; *Midland Valley Ry. Co. v. Fulgham,* 181 Fed. 91, 104 C. C. A. 151; *Randall v. Baltimore & Ohio Ry. Co.,* 109 U. S. 478, 3 Sup. Ct. 322, 27 L. ed. 1003, see, also, Rose's U. S. Notes; *Idaho Mercantile Co. v. Kalanquin,* 8 Ida. 101, 66 Pac.

13.   On excessiveness of verdicts in actions for personal injuries other than death, see comprehensive notes in 16 Ann. Cas. 8; Ann. Cas. 1913A, 1361; L. R. A. 1915F, 30.

933; *Fort Worth Belt Ry. Co. v. Cabell* (Tex. Civ.), 161 S. W. 1083.)

Plaintiff not only assumed the risk of the absence of the tail air-hose apparatus, but he took the risk of injury from the movement of the train. He knew the train would come against the dozer at the speed of at least four miles per hour. He had ample opportunity to determine with certainty what the speed of the train was, by merely turning around and observing its movement. This he did not do. (*Seaboard Air Line Ry. v. Horton,* 233 U. S. 492, Ann. Cas. 1915B, 475, 34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1, 8 N. C. C. A. 834; *Boldt v. Pennsylvania R. R. Co.,* 245 U. S. 441, 38 Sup. Ct. 139, 62 L. ed. 385; *Jacobs v. Southern Ry. Co.,* 241 U. S. 229, 36 Sup. Ct. 588, 60 L. ed. 970, see, also, Rose's U. S. Notes; Pollock on Torts, 10th ed., p. 485; *Neil v. Idaho etc. Ry. Co.,* 22 Ida. 74, 91, 125 Pac. 331; *Nivert v. Wabash Ry. Co.,* 232 Mo. 626, 135 S. W. 33.)

The amount allowed by the jury ($35,000) is more than compensation. Such a verdict amounts to taking property without due process of law and in a purely arbitrary manner through bias, prejudice, and passion committed under the forms of law. (*McAlinden v. St. Maries Hospital Assn.,* 28 Ida. 678, Ann. Cas. 1918A, 380, 156 Pac. 115; *Norfolk & Western Ry. Co. v. Holbrook,* 235 U. S. 625, 35 Sup. Ct. 143, 59 L. ed. 392, 7 N. C. C. A. 814; *Chesapeake & Ohio Ry. Co. v. Gainey,* 241 U. S. 494, 36 Sup. Ct. 633, 60 L. ed. 1124, see, also, Rose's U. S. Notes; *Illinois Cent. Ry. Co. v. Skinner's Admx.,* 177 Ky. 62, 197 S. W. 552 (*certiorari* denied, 246 U. S. 663, 38 Sup. Ct. 333, 62 L. ed. 928); *Neil v. Idaho etc. Ry. Co.,* 22 Ida. 74, 125 Pac. 331; *Denbeigh v. Oregon etc. Nav. Co.,* 23 Ida. 663, 132 Pac. 112; *New York, C. & St. L. Ry. Co. v. Niebel,* 214 Fed. 952, 131 C. C. A. 248.)

The refusal of the court to give the jury a method to follow in making the proper allowance for plaintiff's contributory negligence had no other effect than to aid the excessive verdict. The jury allowed nothing for his negligent act in refusing to take observance of a train which he knew was

backing down until it was upon him.    (*Norfolk & Western
Ry. Co. v. Earnest,* 229 U. S. 114, Ann. Cas. 1914C, 172, 33
Sup. Ct. 654, 57 L. ed. 1096; *Seaboard Airline Ry. v. Tilgh-
man,* 237 U. S. 499, 35 Sup. Ct. 653, 59 L. ed. 1069; *St. Louis
& S. F. R. R. Co. v. Brown,* 241 U. S. 223, 36 Sup. Ct. 602,
60 L. ed. 966; *Illinois Central R. R. Co. v. Skaggs,* 240 U. S.
66, 36 Sup. Ct. 249, 60 L. ed. 528, see, also, Rose's U. S.
Notes; *Pennsylvania Co. v. Sheeley,* 221 Fed. 901, 137 C. C. A.
471; *Waina v. Pennsylvania Co.,* 251 Pa. 213, 96 Atl. 461;
*Nashville, C. & St. L. Ry. Co. v. Banks,* 156 Ky. 609, 161
S. W. 554; *Ross v. St. Louis & S. F. Ry. Co.,* 93 Kan. 517,
144 Pac. 844; *Pfeiffer v. Oregon etc. Nav. Co.,* 74 Or. 307,
144 Pac. 762.) .

The verdict is tainted by the procedure, and the defend-
ant's federal right to have just compensation based upon
legitimate proof has been denied.    In this respect the verdict
is unjust and void.    (*Brown v. Swineford,* 44 Wis. 282, 28
Am. Rep. 582; *Garvik v. Burlington etc. R. Co.,* 124 Iowa,
691, 100 N. W. 498; *Guhl v. Whitcomb,* 109 Wis. 69, 83
Am. St. 889, 85 N. W. 142; *Cincinnati, N. O. & T. Pac. Ry.
Co. v. Nolan,* 161 Ky. 205, 170 S. W. 650; 1 Thompson's
Trials, 1st ed., sec. 861.)

The trial court stated to the jury that the witness McGraw
was prejudiced against the plaintiff.    The statement was
prejudicial and sufficient in itself to warrant a new trial.
(*Beaumont v. Beaumont,* 152 Fed. 55, 81 C. C. A. 251;
*Waldron v. Waldron,* 156 U. S. 361, 15 Sup. Ct. 383, 39 L. ed.
453; *Washington Gas Light Co. v. Lansden,* 172 U. S. 534,
19 Sup. Ct. 296, 43 L. ed. 543; *Throckmorton v. Holt,* 180
U. S. 552, 21 Sup. Ct. 474, 45 L. ed. 663, see, also, Rose's
U. S. Notes; *State v. Shuff,* 9 Ida. 115, 72 Pac. 664; *McKis-
sick v. Oregon etc. Ry. Co.,* 13 Ida. 195, 89 Pac. 629; *Nave v.
McGrane,* 19 Ida. 111, 113 Pac. 82; *Goldstone v. Rustemeyer,*
21 Ida. 703, 123 Pac. 635; *State v. Jackson,* 83 Wash. 514,
145 Pac. 470; *Eckhart v. Peterson,* 94 Wash. 379, 162 Pac.
551; *Edwards v. City of Cedar Rapids,* 138 Iowa, 421, 116
N. W. 323; 38 Cyc. 1320.)

John P. Gray, James A. Wayne, W. F. McNaughton and W. D. Keeton, for Respondent.

On writ of *certiorari* from the supreme court of the United States to a state court, the entire cause is brought up for review and determination. (Fed. Jud. Code, sec. 237; U. S. Comp. Stats. (1916), sec. 1214 (compare, also, Fed. Jud. Code, sec. 240; Comp. Stats., sec. 1217, governing issuance of writ of *certiorari* from United States supreme court to various circuit courts of appeals); *Panama R. Co. v. Napier Shipping Co.,* 166 U. S. 280, 17 Sup. Ct. 572, 41 L. ed. 1004; *Harriman v. Northern Securities Co.,* 197 U. S. 244, 25 Sup. Ct. 493, 49 L. ed. 739; *Lutcher etc. Lumber Co. v. Knight,* 217 U. S. 257, 30 Sup. Ct. 505, 54 L. ed. 757; *Delk v. St. Louis & S. F. R. Co.,* 220 U. S. 580, 31 Sup. Ct. 617, 55 L. ed. 590; *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U. S. 251, 36 Sup. Ct. 269, 60 L. ed. 629, see, also, Rose's U. S. Notes.)

When there is some evidence to sustain each of the material questions upon which the jury is bound to find in order to support a verdict, this court ought not to disturb the verdict even if the court would have found differently on any or all of the issues. (*Cox v. Northwestern Stage Co.,* 1 Ida. 376; *Pleasants v. Fant,* 22 Wall. (U. S.) 116, 22 L. ed. 780, see, also, Rose's U. S. Notes.)

When the verdict is based on substantially conflicting evidence, this court will not disturb such verdict. (*Denbeigh v. Oregon-W. R. & Nav. Co.,* 23 Ida. 663, 132 Pac. 112; *Montgomery v. Gray,* 26 Ida. 583, 585, 144 Pac. 646; *Beaton v. St. Maries,* 27 Ida. 638, 151 Pac. 996; *Tilden v. Hubbard,* 25 Ida. 677, 138 Pac. 1133; *Swanstrom v. Frost,* 26 Ida. 79, 140 Pac. 1105.)

A servant does not assume a risk which arises from the master's negligence. (*Hawkins v. St. Louis & S. F. R. Co.,* 189 Mo. App. 201, 174 S. W. 129; *Thornton v. Seaboard Air Line Ry.,* 98 S. C. 348, 82 S. E. 433; *Central R. R. Co. v. Colasurdo,* 192 Fed. 901, 113 C. C. A. 379; *La Mere v. Railway Transfer Co.,* 125 Minn. 159, Ann. Cas. 1915C, 667, 145 N. W.

1068; *Louisville & N. Ry. Co. v. Stewart*, 241 U. S. 261, 36 Sup. Ct. 586, 60 L. ed. 989; *Knauf v. Dover Lbr. Co.*, 20 Ida. 773, 120 Pac. 157.)

The question of whether or not the plaintiff had assumed the risk would be for the jury. (*Kanawha & Mich. R. R. Co. v. Kerse*, 239 U. S. 576, 36 Sup. Ct. 174, 60 L. ed. 448, see, also, Rose's U. S. Notes; *Bolch v. Chicago, M. & St. P. Ry. Co.*, 90 Wash. 47, 155 Pac. 422.)

The admission of experimental evidence is a matter resting in the sound discretion of the trial court. If the evidence is otherwise admissible,—if it is competent, relevant, material and a part of the *res gestae*,—the action of the trial court in admitting it will not be reversed. The rule is one of general application; it does not depend, in personal injury cases, upon the particular part of the body which is to be examined, but is a principle of the law of evidence depending upon the admissibility of the evidence, and not the character of the object or thing to be examined. (Greenleaf on Evidence, 16th ed., c. 4, sec. 13g; Wigmore on Evidence, vol. 1, sec. 445; vol. 2, sec. 1159, vol. 4, sec. 2180; 3 Jones on Evidence, sec. 403; 17 Cyc. 290 (2), 291, 294 (E and F).)

Such evidence has always been held proper by the courts when relevant to the issue. (*Dunkin v. City of Hoquiam*, 56 Wash. 47, 105 Pac. 149; *Cook v. Danaher Lumber Co.*, 61 Wash. 118, 112 Pac. 245.)

Defendant consented to the admission of such evidence, and the entire record on this subject presents no ruling of the trial court adverse to defendant, no exception to the admission of such evidence, and therefore nothing for this court to review. (*Palcher v. Oregon S. L. R. Co.*, 31 Ida. 93, 169 Pac. 298; *Labonte v. Davidson*, 31 Ida. 644, 175 Pac. 588.)

Considering the nature of the defendant's injuries, and the fact that he is left a hopeless cripple, and that he will doubtless suffer for the balance of his life, the verdict in this case was not excessive. (*Texas-Mexican Ry. Co. v.*

8    Kinzell *v.* Chicago etc. Ry. Co.    [33 Idaho,

Opinion of the Court—Budge, J.

*Douglas,* 73 Tex. 325, 11 S. W. 333; *Wheeling etc. Ry. Co.
v. Suhrwiar,* 22 Ohio C. C. 560; *Lakeshore etc. R. v. Starkey,*
18 Ohio C. C. 700; *Brown v. Sullivan,* 71 Tex. 470, 10 S. W.
288; *Graber v. Duluth S. S. & A. Ry. Co.,* 159 Wis. 414, 150
N. W. 489; *Foster v. Chicago etc. R. Co.,* 134 Iowa, 67, 111
N. W. 415; *Scally v. W. T. Garratt & Co.,* 11 Cal. App. 138,
104 Pac. 325; *The Fullerton,* 167 Fed. 1, 92 C. C. A. 463;
*Rodney v. St. Louis S. W. Ry. Co.,* 127 Mo. 676, 28 S. W.
887, 30 S. W. 150; *Dougherty v. Missouri R. Co.,* 97 Mo. 647,
8 S. W. 900, 11 S. W. 251; *Walsh v. Winston Bros. Co.,* 18
Ida. 768, 111 Pac. 1090; *Maloney v. Winston Bros. Co.,* 18
Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Denbeigh
v. Oregon W. R. & Nav. Co., supra; Ramon v. Interstate
Utilities Co.,* 31 Ida. 117, 170 Pac. 88.)

In all cases where the size of verdicts has been questioned,
the court has considered, as a question of prime importance,
the likelihood of the injured person being subject to con-
tinual pain and suffering in the future. (*Perkins v. Sunset
Tel. & T. Co.,* 155 Cal. 712, 103 Pac. 190.)

The instructions are to be taken together, and read as a
whole, and if they correctly state the law as far as they go,
an isolated sentence or paragraph, which may be obscure, in-
complete or indefinite, or an instruction which, when read
alone, might mislead a jury or give it an improper under-
standing of the law, does not justify a reversal. (*Tarr v.
Oregon Short Line R. Co.,* 14 Ida. 192, 125 Am. St. 151, 93
Pac. 957; *Just v. Idaho Canal etc. Co.,* 16 Ida. 639, 133 Am.
St. 140, 102 Pac. 381; *Portneuf etc. Irr. Co. v. Portneuf
Irr. Co.,* 19 Ida. 483, 114 Pac. 19; *Knauf v. Dover Lumber
Co.,* 20 Ida. 773, 120 Pac. 157; *Breshears v. Callender,* 23 Ida.
348, 131 Pac. 15; *Quirk v. Sunderlin,* 23 Ida. 368, 130 Pac.
374; *Tilden v. Hubbard,* 25 Ida. 677, 138 Pac. 1133; *Osborn
v. Cary,* 28 Ida. 89, 152 Pac. 473; *Ramon v. Interstate Utilities
Co., supra.*)

BUDGE, J.—This case is now here on mandate from the
supreme court of the United States, reversing the former
decision of this court (*Kinzell v. Chicago etc. R. Co.,* 31 Ida.

365, 171 Pac. 1136), and remanding the case for further proceedings not inconsistent with the opinion of that court. (248 U. S. 552, 39 Sup. Ct. 6, 63 L. ed. 8.)

An application has been made by respondent to have this court tax certain alleged costs, to wit, $75.75, paid to the clerk of this court for a certified copy of the record for use on application for writ of *certiorari* to the supreme court of the United States, and $299 paid for printing transcript of record for use on said application.

It is claimed that these items are taxable under subd. 3, rule 24 of the rules of the supreme court of the United States, which is as follows:

"In cases of reversal of any judgment or decree in this court, costs shall be allowed to the plaintiff in error or appellant, unless otherwise ordered by the court.

"The cost of the transcript of the record from the court below shall be a part of such costs, and be taxable in that court as costs in the case."

Both items were included in the original cost bill filed in the supreme court of the United States, and were rejected.

It is urged by appellant that there is no statute of this state permitting the recovery of the particular costs and disbursements set forth in the memorandum, and that costs are not recoverable under the laws of this state in the absence of a statute (*Cronan v. District Court*, 15 Ida. 462, 98 Pac. 614; *Schmelzel v. Board of County Commrs.*, 16 Ida. 32, 133 Am. St. 89, 17 Ann. Cas. 1226, 100 Pac. 106, 21 L. R. A., N. S., 199), or rule of this court (*Price et al. v. Garland,* 5 N. M. 98, 20 Pac. 182), but I am of the opinion that respondent's right to have the items presented taxed as costs does not depend upon the existence of any statute of this state or rule of this court. His right to recover these costs is given by the rule of the supreme court of the United States above quoted, and this court is merely an arm of that court for the purpose of taxing such costs. In other words, the right to recover the items as costs exists by virtue of the rule of the supreme court of the United States, and the duty of

this court to tax or fix the amount of such costs exists by virtue of the same rule.

Appellant has made application to argue the assignments of error which were not considered by this court in arriving at its former decision. This application has been resisted by the respondent upon the theory that the whole case went to the supreme court of the United States on the writ of *certiorari,* and that its decision reversing the decision of this court is final as to all matters involved in the case and that nothing now remains for this court to do except to affirm the judgment from which the appeal has been taken. Many authorities have been cited in support of this theory, but none of them appear to us to be in point. Counsel for respondent in their brief say:

"It will be noticed that all the cases we have cited are cases in which the writ o*f certiorari* has been issued to a circuit court of appeals, rather than to the highest court of a state or territory. Comparison of the two acts, however, indicates no reason why the practice in the consideration and disposition of the case should not be uniform under the two acts, . . . . "

This statement clearly indicates the error into which counsel have fallen. The two acts referred to are sec. 237 of the Federal Judicial Code, 36 Stat. L. 1156, as amended 38 Stat. L. 790, U. S. Comp. Stats. 1916, sec. 1214, vol. 2, p. 1580, 5 Fed. Stats. Ann., 2d ed., 723, providing for writs of error and *certiorari* to the highest court of a state, and sec. 240 of the Judicial Code, 36 Stat. L. 1157, U. S. Comp. Stats. 1916, sec. 1217, vol. 2, p. 1750, 5 Fed. Stats. Ann., 2d ed., 854, providing for the writ of *certiorari* to the circuit court of appeals. While the procedure under the two acts is identical, the scope of review exercised by the supreme court of the United States under them, respectively, is very different. (*Murdock v. City of Memphis,* 87 U. S. (20 Wall.) 590, 22 L. ed. 429, see, also, Rose's U. S. Notes.) On writ of *certiorari* to the circuit court of appeals the supreme court of the United States has power to dispose of the merits, which,

however, it will only do in exceptional cases and for very important reasons, the usual practice being to correct the error, if any is found, committed by the circuit court of appeals and remand it to that court so that it may proceed to discharge its duty of hearing and deciding the case conformably to law.  (*Brown v. Fletcher,* 237 U. S. 583, 35 Sup. Ct. 750, 59 L. ed. 1128, see, also, Rose's U. S. Notes.)  On the other hand, however, when a writ of *certiorari* is issued to the highest court of a state, the supreme court of the United States is not concerned with, nor does it have jurisdiction to dispose of, the merits except in so far as they relate to the federal question upon which its jurisdiction depends.  (*St. Louis etc. R. Co. v. Taylor,* 210 U. S. 281, 28 Sup. Ct. 616, 52 L. ed. 1061; *Waters-Pierce Oil Co. v. Texas,* 212 U. S. 86, 29 Sup. Ct. 220, 53 L. ed. 417, see, also, Rose's U. S. Notes.)

In the former opinion the supreme court of the United States said:

"We have not the power to correct mere errors in the trials in state courts, although affirmed by the highest state courts.  This court is not a general court of appeals, with the general right to review the decisions of state courts. We may only inquire whether there has been error committed in the decision of those federal questions which are set forth in sec. 709 of the Revised Statutes (now sec. 237 of the Judicial Code). . . . . "

In the latter case that court said:

"The jurisdiction of this court to review the proceedings of the state courts, as we have had frequent occasion to declare, is not that of a general reviewing court in error, but is limited to the specific instances of denials of federal rights, whether those pertaining to the constitutionality of federal or state statutes, or to certain rights, immunities, and privileges of federal origin, specially set up in the state court, and denied by the rulings and judgment of that court."

Assignments of error which involve no federal question cannot be reviewed by the supreme court of the United States under Judicial Code, sec. 237.  (*Central Vermont R. Co. v.*

*White,* 238 U. S. 507, Ann. Cas. 1916B, 252, 35 Sup. Ct. 865, 59 L. ed. 1433, 9 N. C. C. A. 265, see, also, Rose's U. S. Notes.)

In our previous opinion we confined our decision expressly to the federal question involved, and held that respondent was not entitled to proceed under the federal employers' liability act because he was not engaged in interstate commerce. We, therefore, necessarily left undecided, and so stated, other important errors urged on the appeal. But the supreme court of the United States held that respondent was engaged in interstate commerce at the time of his alleged injury and was entitled to bring his action under said act, and has remanded the case to this court by its mandate for further proceedings not inconsistent with its opinion.

Since the supreme court of the United States has decided that respondent is proceeding properly under the federal employers' liability act, it is our duty to consider upon the merits the errors relied upon for a reversal of the judgment. This procedure is in conformity with the authorities already cited, and the practice pursued in cases of this kind by other states. (*Goodtitle v. Kibbe,* 1 Ala. 403; *Gibson v. Chouteau,* 50 Mo. 85; *Harding v. Harding,* 148 Cal. 397, 83 Pac. 434; *Ettor v. City of Tacoma,* 77 Wash. 267, 137 Pac. 820; *Simonson v. Monson,* 36 S. D. 245, 153 N. W. 1020; *St. Louis, I. M. & S. R. Co. v. McWhirter,* 155 Ky. 301, 159 S. W. 796.)

Having reached the conclusion that the remaining assignments of error are here for decision, we shall proceed to dispose of the points raised.

Appellant contends that the trial court erred in submitting the question whether the "presence of the tail air-hose would have prevented a collision with the dozer with such force as to knock and jar plaintiff therefrom." There was evidence tending to show not only that it was usual and customary to equip such trains with a tail air-hose, but that just prior to the accident the two work trains in use upon this particular work were so equipped, and further that the tail air-hose was designed for use in emergencies and that by its use the brakeman could stop the train when necessary,

without signaling the engineer. The evidence leaves no doubt that the particular train which struck the dozer at the time of respondent's injury was not so equipped, and the testimony of respondent is to the effect that he did not know whether it was or not. Although the evidence offered by appellant was to the effect that none of the trains engaged in this work was equipped with a tail air-hose, and also that it was not practical to so equip them, it is clear from the conflicting nature of the evidence that the issue of the tail air-hose was one upon which the jury had a right to pass, and the court committed no error in refusing to take that issue from the jury.

Appellant insists that the court should have directed a verdict for the reason that "eight unimpeached railroad men proved that the speed of the train did not exceed four miles an hour when making this coupling." The testimony of respondent and of Lee, who was also working on the dozer at the time of the accident, was to the effect that the train was moving at a speed of about ten miles an hour, that notwithstanding they were both holding on to portions of the dozer, the force of the impact was such as to break their hold loose, respondent being thrown between the cars. A witness for appellant testified on cross-examination that if such were the fact, the train was moving at a greater speed than four miles an hour. Here again the conflicting testimony made it necessary for the jury to determine the fact.

Appellant also urges, if we understand his contention correctly, that since respondent was in a position where if he had looked he could have seen at what speed the train was coming, that he did not do so, and that, therefore, he assumed the risk of the unusual speed at which the train was traveling. We are unable to see any element of assumption of risk in this phase of the case. All of the evidence discloses, and it is conceded by both appellant and respondent, that if the train had not been proceeding at to exceed a speed of four miles per hour the appellant would not have been negligent, but that any speed in excess of four miles per

hour would be a negligent and careless speed at which to attempt to couple on to the d  ⌐⌐. Respondent, therefore, had the right to assume that t  coupling would be made at a speed of not to exceed fou  miles per hour, and to proceed with his duties on the dozer with the feeling of security which that assumption would give, and he was not required to turn from his duties for the purpose of determining whether or not the particular coupling would be negligently attempted, and by omitting to do so he assumed no risk which a speed in excess of four miles per hour would entail. Even if he had looked and had seen at what speed the train was coming, that would not bind him to an assumption of such a risk. The position which he then occupied left him no choice but that of protecting himself as best he could against a risk which he had not assumed and which was not necessarily or properly incident to the business.

A similar contention that respondent assumed the risk in the absence of a tail air-hose is equally untenable. If we assume from the verdict that the jury found that it is usual and customary to equip work trains with such an appliance and that the absence of the tail air-hose was negligence, there is no evidence that respondent had been previously notified that this particular train would not be so equipped, nor is there anything in the record from which it may be inferred that respondent, by the exercise of ordinary care, should have ascertained the fact. It is not within the bounds of probability that he could have discerned this defect a quarter of a mile distant, at which he first observed the approach of the train, and the same rule of law ·which gave him the right to assume that the coupling would be made at the usual rate of speed also gave him the right to assume that the approaching train was equipped with the customary safeguards. Furthermore, even if upon the approach of the train he could have discerned that it was not equipped with a tail air-hose, he could not be said to have assumed that risk, for he was already placed in a dangerous position, augmented by risks as to which he was not advised and which

were not present when he entered into the employment and assumed his duties on the dozer. By driving down upon him with a train thus defectively equipped, the railroad company could not enlarge the scope of the risks which he had already assumed.

Appellant complains of the instructions which the trial court gave for the guidance of the jury in the event they should find the respondent to any extent guilty of contributory negligence, but the jury found specifically upon an interrogatory submitted that appellant was entitled to no diminution from the amount of damages actually sustained attributable to contributory negligence, a finding which must in the very nature of things have been based upon the further finding by the jury that the respondent was not guilty of contributory negligence. Without passing upon the sufficiency or correctness of the instructions questioned, it is clear that from this state of the record no error appears of which appellant may complain. The point is controlled by the rule aptly expressed by the supreme court of the United States, as follows:

"Error in refusing a requested instruction does not require a reversal of the judgment where the jury, by its specific findings of fact, distinctly negatived the hypothesis upon which alone the instruction was based." (*Kanawha & Michigan Ry. Co. v. Kerse,* 239 U. S. 576, 36 Sup. Ct. 174, 60 L. ed. 448, see, also, Rose's U. S. Notes.)

Error is predicated upon the giving of the following instruction:

"You are instructed that if you find from all of the evidence of the case that the brakeman Moody and the engineer and other employees on the train at the time of the happening of the accident and injury to the plaintiff in this action were employed by the defendant company as such employees upon the train at the time in question *I charge you that the defendant company is bound by the acts of each of such employees within the scope of his employment and authority by the defendant and the defendant is respon-*

*sible for any act or acts of negligence of such employees and
if either or any of such employees was guilty of any negli-
gent action or conduct as such employee in the discharge of
his duty and employment at the time of the accident the
defendant is responsible therefor and the employee's negli-
gence in respect to the discharge of his duties as such em-
ployee of the defendant company upon the said train in ques-
tion, if any, was the negligence of the defendant."*

It is urged that the italicized portion of the foregoing in-
struction is misleading and foreign to the issues involved, and
that by its terms the jury were at liberty to unearth any act
against any employee, call it negligence, and charge it to the
railroad company, and to base its verdict on acts other than
the two specific charges of negligence, viz., the absence of the
tail air-hose and the excessive speed of the train. When this
instruction is read in connection with instructions Nos. 5 and
14, wherein the jury was told that the appellant would be
liable to the respondent for damages if it should find that while
engaged in interstate commerce he was injured as a result
of the negligence of appellant, it is not open to the criticism
offered by appellant. The purpose of the instruction was to
advise the jury that under the employers' liability act the
fellow-servant doctrine no longer obtains, but that the em-
ployer is liable to the employee for injuries caused by the
negligence of other employees when acting within the scope
of their employment. Considering the instructions as a whole,
the jury was not misled by the instruction complained of.
(*Taylor v. Lytle,* 29 Ida. 546, 160 Pac. 942; *State v. Ward,*
31 Ida. 419, 173 Pac. 497; *Tyson Creek R. R. Co. v. Empire
Mill Co.,* 31 Ida. 580, 174 Pac. 1004.)

Error is also predicated upon the giving of the following
instruction:

"You are further instructed that it is the duty of defend-
ant in operating its said train and cars over the track to use
reasonable care to keep a lookout ahead and if said defendant
and its employees in charge of the said train by keeping a
lookout could have seen the said dozer upon the track and

the plaintiff thereon in ample time to have stopped the said train, or to have reduced the speed of the train so as to make an easy coupling, but notwithstanding such facts failed to keep such lookout, or keeping such lookout failed to reduce the speed of the train so that an easy coupling might be made and that by reason thereof struck the train with great and unusual force and violence, jarring and knocking the plaintiff off of the said dozer, then the defendant was guilty of negligence.''

Appellant contends that this instruction injected a new and false issue into the case, involving the last clear chance doctrine. The contention is unsound. It was a part of the trainmen's duties to keep a lookout in the direction in which they were going, viz., toward the dozer and those working thereon, and to reduce the speed and to see to it that when attempting to couple on to the dozer the train did not strike it with great or unusual force or violence. Any less degree of care would be palpable negligence on the part of appellant. The instruction was properly given.

It is strenuously insisted by appellant that certain experiments and examinations which were made on and of the person of respondent during the trial in the presence of the jury were so indecent and shameful as to require a reversal of the case. While we are of the opinion this evidence was properly admitted (Greenleaf on Evidence, 16th ed., chap. 4, sec. 13g; Wigmore on Evidence, vol. 1, sec. 445, vol. 2, sec. 1159, vol. 3, sec. 2180; 3 Jones on Evidence, sec. 403; 17 Cyc. 290, 291, 294; *Dunkin v. City of Hoquiam,* 56 Wash. 47, 105 Pac. 149; *Cook v. Danaher Lumber Co.,* 61 Wash. 118, 112 Pac. 245), it should be observed that the only objections which were made went not to its admissibility but to the order in which the evidence was offered. The first objection, that respondent was interfering with the presentation of appellant's case, was sustained. The next objection, that the evidence was not proper rebuttal, was acceded to by respondent and the trial court permitted the latter to reopen his case, to which appellant objected. The propriety of per-

mitting respondent to reopen rested in the sound discretion of the trial court, and in view of the sharp conflict in the evidence upon the questions to which the experiments were directed, we are satisfied that the trial court did not abuse its discretion in this regard. (*Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545; *Hall v. Jensen,* 14 Ida. 165, 93 Pac. 962; *Union Sav. etc. Co. v. McClain,* 23 Ida. 325, 130 Pac. 84.)

Moreover, appellant's counsel while objecting upon the ground that respondent's examination was not cross-examination but was interfering with the conduct of appellant's case, stated: "I have no objection to the examination of the anus. I did not object to it and do not object now, but I do object now to any further demonstration here to confuse the jury." The record discloses no change of attitute on the part of appellant, except as to the objections already referred to. There is, therefore, no merit in this contention.

Appellant assigns as prejudicial error a remark of the court made during the progress of the trial. Michael McGraw was a witness for the appellant, and in the course of his cross-examination had denied that he felt very unkindly toward respondent Kinzell. Respondent was called in rebuttal, and on his direct examination the following occurred:

"Q. Did you see that man, Mr. McGraw, there any place?

"A. No, sir, he was not there.

"Q. Did you discharge McGraw at any time?

"A. I did; yes, sir.

"Mr. Korte: I object to that as not rebuttal; collateral issue brought out on cross-examination. We would have a right to again try that issue by our witnesses as to whether he was there or not.

"The Court: I think it is not proper rebuttal.

"Mr. Gray: Question of interest. He denied interest in that respect, feeling toward this witness.

"The Court: He showed very strongly that he had feeling against Kinzell while upon the witness-stand.

"Mr. Korte: I think your honor's remark is very prejudicial, and want to except to it, with all deference to the court."

The remark of the court was erroneous. Trial courts should be very careful to make no remark during the progress of a trial having a tendency to express the court's opinion as to the credibility of a witness, or as to the weight of the evidence. It is not sufficient cause for reversal of a judgment that an erroneous remark of the trial court, during the progress of the trial, may possibly have affected the verdict. (*Brown v. Tull* (Okl.), 164 Pac. 785; *First Nat. Bank v. Yoeman,* 17 Okl. 613, 90 Pac. 412.) Considering the portion of the record quoted above, in connection with the entire record in the cause, it is not reasonably probable that the remark of the court affected the verdict, or deprived appellant of any substantial right. The court subsequently instructed the jury: "You are the exclusive judges of the credibility of the witnesses, and the weight to be given the testimony of each witness." While such an instruction generally would not cure the injury caused by a remark of the court having a tendency to give its opinion as to the credibility of a witness, or as to the weight of his testimony, we are of the opinion that in this instance prejudicial error, requiring reversal of the judgment, was not shown.

It is contended that the verdict is excessive and that the instructions of the trial court relative to the measure of damages were erroneous. As to the instructions, appellant appears to be proceeding upon the erroneous theory that respondent would only be entitled to recover his actual pecuniary loss. The rule is well settled to the contrary, where the action is brought by the injured employee himself, that the jury may take into consideration in assessing the damages the pain and suffering of the plaintiff, his mental anguish, the bodily injury sustained by him, his pecuniary loss, his loss of power and capacity for work and its effect upon his future. (*Chesapeake & O. R. Co. v. Carnahan,* 241 U. S. 241, 36 Sup. Ct. 594, 60 L. ed. 979; *Michigan Central R.*

*v. Vreeland,* 227 U. S. 59, Ann. Cas. 1914C, 176, 33 Sup. Ct. 192, 57 L. ed. 417, see, also, Rose's U. S. Notes.)

The exhibition of respondent's person at the close of the trial was of a nature to strongly excite the sympathies of the jury, and we conclude that the amount of the verdict was in part the result of passion and prejudice. The respondent at the time of his injuries was twenty-nine years of age, and had an expectancy of about thirty-five years, his average earnings being $150 per month. While seriously disabled, the evidence shows that he still possesses some earning capacity. We conclude that a verdict for $25,000 is as much as the evidence in the case will justify. That sum, if put out at seven per cent interest, will produce a yearly income of $1,750. This income, in view of the evidence, is compensation to respondent for the loss of his earning capacity. There would remain the principal sum of the judgment unimpaired, which, under any reasonable view, is a sufficient sum to compensate him for his pain and suffering, mental anguish and bodily injuries sustained. (*McKenzie v. North Coast Colliery Co.,* 55 Wash. 495, 104 Pac. 801, 28 L. R. A., N. S., 1244.)

We have carefully gone through the entire record and are satisfied that no error has been presented which would justify us in reversing the case.

The judgment will be affirmed to the extent of $25,000, together with respondent's costs in the district court, with interest on both the judgment and such costs from the date of the original judgment at the rate of seven per cent, on condition that the respondent file, within 30 days after the going down of the *remittitur,* a waiver of the excess of $10,000, and an acceptance of the judgment as thus modified. On failure to do so the judgment will be reversed *in toto* and a new trial granted. (*Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Walsh v. Winston Bros. Co.,* 18 Ida. 768, 111 Pac. 1090; *Barter v. Stewart Mining Co.,* 24 Ida. 540, 135 Pac. 68; *Kelly v. Lemhi Irr. & Orchard Co., Ltd.,* 30 Ida. 778, 168 Pac. 1076.) No costs are awarded on appeal in this court.

RICE, J., Concurring.—I concur in all of the foregoing opinion, except that portion referring to the taxation of the items of costs claimed under subd. 3, rule 24 of the rules of the supreme court of the United States. In that portion of the opinion I do not concur.

MORGAN, C. J., Dissenting.—The negligence of appellant's employees, alleged in the complaint and relied on for recovery, consisted in causing the train to be run at a dangerour speed against the car, referred to in the foregoing opinion as a "dozer," causing respondent to be thrown therefrom and injured; in not maintaining a proper lookout on the front of the train as it was being pushed along the track toward respondent; in not maintaining a brakeman to transmit signals between the front of the train and the engine; in not maintaining, on the front car, an air-hose and valve by means of which the train could be stopped; also that after respondent was knocked off the car the engineer negligently and carelessly failed to apply the air-brakes, by reason whereof respondent was pushed, dragged and rolled along the track, whereby he sustained the injuries to recover damage for which he sued.

Instruction numbered 4, being that first quoted in the foregoing opinion, advised the jury that appellant was responsible for any act, or acts, of negligence of its employees on the train and "if either or any of such employees was guilty of any negligent action or conduct as such employee in the discharge of his duty and employment at the time of the accident the defendant is responsible therefor and the employee's negligence in respect to the discharge of his duties as such employee of the defendant company upon the said train in question, if any, was the negligence of the defendant."

The error in this instruction consists in not confining it to acts of negligence embraced within the issues, and which resulted in respondent's injuries, and the same criticism may be made of instructions numbered 5 and 14, relied on in the foregoing opinion to correct it.

The instructions given in this case cannot be sustained when viewed in the light of the authorities cited in the opinion in support of them. The entire charge, when read and considered together, permitted the jury to take into consideration and to base its verdict on any act, or acts, of negligence of any employee, or employees, of appellant who were working on the train in question, whether or not such acts were relied on by respondent for a recovery, or such negligence caused or contributed to his injuries.

The remark of the presiding judge, reflecting on the credibility of appellant's witness, McGraw, was prejudicial error. The jury could not do otherwise than draw the inference therefrom that his honor was convinced, from the demeanor of the witness, he was biased and prejudiced and that his testimony, with respect to his feeling toward respondent, was false.

After finding the conduct of the trial judge to be erroneous the majority of the court observes: ''Considering the portion of the record quoted above, in connection with the entire record in the case, it is not reasonably probable that the remark of the court affected the verdict, or deprived appellant of any substantial right.'' This is important, if true, but I am unable to find anything in the record which tends to correct the error, nor have I been able to ascertain what is relied on to render the remark harmless, though I have earnestly sought such information where, if it exists, it ought to be found.

The danger in that remark, coming from the source it did, is apparent when viewed in the light of the entire instruction, a small portion of which has been quoted in the opinion apparently ''in mitigation of damages.'' ''You are the exclusive judges of the credibility of the witnesses and of the weight to be given to the testimony of each witness. You may take into consideration the interest, bias or prejudice of any witness, if such interest, bias or prejudice exists, the probability or improbability of the testimony, and any and all other facts and circumstances in evidence which in your judgment would add to or detract from the credibility of

the witnesses or the weight of their testimony. If there is a conflict in the testimony you must reconcile it, if you can. If not, you may believe or disbelieve any witness or witnesses, according as you' may or may not think them entitled to credit. If you believe that a witness has knowingly testified falsely as to any material matter, you are at liberty to disregard the entire testimony of such witness, except in so far as he may be corroborated by other credible evidence.''

By the erroneous remark the presiding judge told the jury McGraw showed very strongly he ''had feeling against Kinzell,'' although the witness had testified to the contrary. In the instruction the jury was told it might take into consideration the bias and prejudice of a witness as a fact which would tend to detract from his credibility, and if there was a conflict in the testimony which it could not reconcile, it might believe or disbelieve any witness, according as it might think him entitled to credit. Furthermore, if it believed a witness had knowingly testified falsely as to any material matter (and the jury was in possession of the views of his honor on this point with respect to the witness McGraw), it was at liberty to disregard the entire testimony of such witness, except in so far as he might be corroborated by other credible evidence.

The supreme court of Iowa, in *State v. Philpot,* 97 Iowa, 365, 66 N. W. 730, said: ''The rule seems to be well settled that if the judge, during the progress of the trial, makes remarks in the presence of the jury, which would be erroneous and prejudicial had they been embodied in the formal charge given by him to the jury, it will entitle the losing party to have a verdict to which they might have contributed set aside.''

The Texas court of criminal appeals, in *Gribble v. State* (Tex. Cr.), 3 A. L. R. 1096, 210 S. W. 215, said: ''The fact that a statement of the court as to the importance or unimportance of testimony is stated from the bench would often make it no less hurtful than if contained in the written charge. The trial judge is to the jury the Lord's Anointed;

his language and his conduct have, to them, a special and peculiar weight.''

The rule with respect to prejudicial remarks by the presiding judge in the presence of the jury may be gleaned from the following quotations from the opinions of justices of our court written during the quarter of century last past:

''There can be no question but that the remarks of the court were not only improper, but were manifestly prejudicial to the defendant, and constitute reversible error.'' (*State v. Taylor,* 7 Ida. 134, 61 Pac. 288.)

''It is, a well-settled principle that trial courts should be guarded from any expression in the presence or hearing of the jury that can in any way be construed into an expression of their views on any evidence that may be before the jury.'' (*State v. Shuff,* 9 Ida. 115, 72 Pac. 664.)

''The trial court must avoid remarks that tend to give to the jury the impression that counsel is asking foolish questions and trifling with the court, and thus create prejudice.'' (*Nave v. McGrane,* 19 Ida. 111, 113 Pac. 82.)

''It is a well-recognized fact that jurors as a rule are quick to discern the opinion of the trial court as to the guilt or innocence of a defendant, or his opinion as to the truthfulness of a witness, and if a juror concludes from the act or suggestion of the court that it disbelieves a witness, it is sure to have a prejudicial effect against the litigant calling the witness, and especially is this true where public feeling and prejudice run rampant against a defendant charged with a horrible crime.'' (*State v. Clark,* 27 Ida. 48, 146 Pac. 1107.)

Criticising the conduct of a trial judge in discussing in his instructions the credibility of the defendant as a witness, it is said: ''We think the better rule for the court to follow is not to single out any special witness personally and burden his testimony with any suggestions which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely. . . . . And the giving of such instruction cannot be regarded as otherwise than erroneous.'' (*State v. Rogers,* 30 Ida. 259, 163 Pac. 912.)

The testimony of McGraw contradicted that of respondent as to the speed of the train and as to what the latter was doing just prior to the accident, and, if believed, should have, and almost certainly would have, prevented the verdict complained of.

Since those responsible for the foregoing opinion have found the remark of the presiding judge to be erroneous, because it reflected on the credibility of the witness and detracted from the weight of his testimony, and since they are unable to find, or at least to point out, wherein it was cured, and in view of the importance of that testimony, it is safe to say a justifiable reason for the conclusion announced does not exist.

(June 9, 1920.)

#### ON PETITION FOR REHEARING.

BUDGE, J.—Upon petition for rehearing our attention has been called to the statement in the original opinion "that the *amount* of the verdict was in part the result of passion and prejudice."

Since the meaning we intended to convey has been apparently misunderstood, we desire to add that although we cannot say that the rendition of the verdict in favor of respondent was the result of passion or prejudice, his condition, observed by the jury during the exhibition of his person at the close of the trial, was such as naturally to strongly excite the sympathies of the jury, and the verdict was doubtless augmented as a result thereof.

The petition for rehearing is denied.

Morgan, C. J., and Rice, J., concur.