(May 19, 1900.)

## STATE v. TAYLOR.

[61 Pac. 288.]

CRIMINAL LAW—EVIDENCE—PREJUDICIAL REMARKS BY COURT—REVER- SIBLE ERROR.—Where, on the trial of a defendant, upon a charge of murder, a witness testified that after the shooting, and when the defendant was some distance from the house where the shoot- ing took place, "he [the defendant], took a shot at me" (the witness), in overruling an objection to the evidence, the court re- marked that "the object of the admission of that testimony is to show the character, disposition and action of the defendant at that time as being evilly disposed toward some one." *Held*, that both the admission of the testimony and remarks of the court were error. The coroner, being upon the witness stand, was asked by the prosecution if he held an inquest over the deceased, and the question being objected to by defendant, the court remarked in sustaining the objection: "I sustain that. There was nothing mysterious about it. People knew who shot him. A coroner's inquest is only to find out how a person came to his death. If known otherwise, they do not have to hold one." *Held*, rever- le error.

(Syllabus by the court.)

from District Court, Shoshone County.

W. W. Woods, for Appellant.

In overruling the defendant's motion to strike out the words, "He took a shot at me," the court said: "The object of the admission of that testimony is to show the character, disposition and action of the defendant at that time as being evilly disposed toward some one." This remark was highly prejudicial to the defendant; it was suggestive of his guilt, and indicated prejudice on the part of the judge; it was an invasion of the province of the jury and suggested that the defendant was of bad character, and evilly disposed toward some one, and that it was therefore probable that he was guilty of the offense charged. A judge has no more right to volunteer before the jury his opinion upon a material fact in controversy while deciding a question of law on the trial than he has to charge in respect to such facts. (2 Thompson on Trials, sec. 2297; *People v. Buster,* 53 Cal. 612; *People v. Williams,* 17 Cal. 142.) The court erred in remarking in the presence of the jury while ruling on a question of law, "There was nothing mysterious about it. People knew who shot him. A coroner's inquest is only to find out how a person came to his death. If known otherwise, they do not have to hold one." (*People v. Stanton,* 106 Cal. 139, 39 Pac. 525; *People v. Hertz,* 105 Cal. 660, 39 Pac. 32; *People v. Gordon,* 88 Cal. 422, 26 Pac. 502; *People v. Chew Sing Wing,* 88 Cal. 268, 25 Pac. 1099; *State v. Jackson* (Kan.), 22 Pac. 427; *State v. Lewis,* 56 Kan. 374, 43 Pac. 265; *People v. Cronin,* 34 Cal. 191; *State v. Addy,* 28 S. C. 16, 4 S. E. 814; *State v. Lee,* 91 Iowa, 505, 60 N. W. 119; *State v. Fisher,* 23 Mont. 540, 59 Pac. 919; *People v. Strong,* 30 Cal. 158; *People v. Taylor,* 36 Cal. 265; *People v. Best,* 39 Cal. 690.)

Samuel H. Hays, Attorney General, for the State.

It is contended that the court erred in refusing to strike from the testimony of Mabel Meade, the statement, "He took a shot at me." The killing took place at Mabel Meade's house where the parties were visitors. Defendant "took a shot at" the witness as soon as she came out of the house, which was only a moment after the shooting and while defendant was

still but a few feet away. While the affray was in progress, Mabel Meade had hold of Barnhart's coat and attempted to prevent a difficulty. Even under the rule as stated in appellant's brief this was part of the *res gestae.* (See *State v. Ellington,* 4 Idaho, 529, 43 Pac. 60; *State v. Davis,* 6 Idaho, 159, 53 Pac. 678.) In examining Dr. France, the coroner, the following proceedings were had: "Q. Did you hold a coroner's jury over the death of Ed. Lorey? A. I did not. Q. State to the jury why you did not. Mr. Evens: We object. The Court: I sustain t hat. There was nothing mysterious about it. People knew who shot him. A coroner's inquest is only to find out how a person came to his death. If known otherwise, they do not have to hold one." This exception cannot be considered in this form for the reason that it is not one of the matters that can be embodied in a bill of exceptions. (See Rev. Stats., secs. 7940, 7942.. Neither is it a matter authorizing the granting of a new trial. (Rev. Stats., sec. 7952.) Nor is it ground for arrest of judgment. (Rev. Stats., sec. 7960.)

HUSTON, C. J.—The defendant was convicted of manslaughter, and appeals from the judgment of conviction, and also from the order of the court denying the motion for a new trial.

Briefly stated, the facts in the case, as they appear from the record, are about as follows: The defendant, one Barnhart, and one Mabel Meade were engaged in some dispute or altercation upon the porch of the house occupied by the said Mabel Meade as a house of prostitution, in the town of Wardner. While this altercation was going on, the deceased came out of the house, onto the porch, and engaged in the controversy. Almost immediately upon the appearance of deceased, he and Barnhart engaged in what is termed by the witness a "scuffle." They clinched, and in their scuffle they passed from the porch into the hall of the house, and from the hall into the front room or parlor; and as they passed into the front room or parlor a shot was fired, and the deceased fell, expiring almost instantly. When deceased and Barnhart

passed from the hall into the front room, they were clinched. The woman, Mabel Meade, testified that when the shot was fired she had hold of Barnhart's arm, and that he and deceased were clinched. She did not see the defendant after the scuffle commenced between Barnhart and deceased, "until she saw him going down the alley after the shooting." The only other person in the room at the time of the shooting was the woman Susie Wilson, who testifies that she did not see the defendant at all, and that, had he been in the room, she must have seen him. The physician who examined the body of the deceased immediately or very soon after the shooting testifies as follows: "I could determine the point of entrance, on account of a powder stain or powder mark covering an area of, perhaps, two inches in diameter. The hair was singed right down to the scalp, showing that the gun was in close proximity to the body when the shot was fired. Q. Describe to the jury, in your opinion, how far the gun was from the head of Leroy. A. When he was shot, approximately, I should say anywhere from two to six feet." No witness testified to seeing the defendant inside the house when the shooting took place. The witness Mabel Meade was permitted, over the objection of defendant, to testify that after the shooting, and while defendant was going from the house down an alley, he "took a shot at her." Defendant's counsel moved to strike out this testimony, which motion was denied by the court; the court saying: "The object of the admission of that testimony is to show the character, disposition, and action of the defendant at the time, as to being evilly disposed toward some one. That is the proposition." To all of which defendant excepted. We think the admission of this testimony was error. It was not admissible as a part of the *res gestae,* and the reason given by the court for its admission is still more erroneous. In the trial of a criminal case, and more especially one in which the life of the defendant is involved, the trial court cannot be too careful in refraining from any act or expression which can possibly tend to prejudice the case of the defendant with the jury.

(2 Thompson on Trials, sec. 2297; *People v. Buster,* 53 Cal. 612; *People v. Williams,* 17 Cal. 142.)

On the trial, one Hugh France, the coroner, and the physician first called to see defendant after the shooting, testified as follows: "Q. Did you·hold any coroner's jury over the death of Ed. Leroy? A. I did not. Q. State to the jury why you did not. Mr. Evens (counsel for defendant): We object as immaterial, irrelevant, no part of the *res gestae.* The Court: I sustain that. There was nothing mysterious about it. People knew who shot him. A coroner's inquest is only to find out how a person came to his death. If known otherwise they do not have to hold one." To the above remarks of the court, defendant excepted. There can be no question but that the remarks of the court were not only improper, but were manifestly prejudicial to the defendant, and constitute reversible error. We cannot agree with the attorney general in his contention that this is not a proper matter to be brought here by bill of exceptions. It was error—prejudicial error— and was duly excepted to, and properly embodied in the bill of exceptions. The court had an opportunity to direct the jury not to regard it, but did not do so; and, even if he had, the error would not have been cured thereby. The witness France also testified that while defendant was under arrest, and shortly after the shooting, he (witness) heard defendant say that "he [defendant] fired the shot that killed Leroy [the deceased]." This is the only direct testimony connecting the defendant with the shooting. The only witnesses present in the room at the time the shot was fired, and who testified on the trial, to wit, Mabel Meade and Susie Wilson, state that the defendant was not in the room when the shot was fired. Inasmuch as the cause must be sent back for a new trial, we do not deem it necessary to consider the question of the insufficiency of the evidence to support the verdict.

We have carefully examined the instructions given and refused, and we cannot say that any substantial error appears therein. While some of the instructions asked by the defendant, and refused by the court, state the law correctly, we think

the subject matter of them was contained in the instructions given by the court.   The judgment of the district court is reversed, and a new trial ordered.

Sullivan, J., concurs.

Quarles, J., was absent at the hearing of this case, on account of sickness.