WILLIE RYAN, *alias* BOBBIE RYAN, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed May 19, 1922.

Petition for Rehearing Denied June 22, 1922.

1. Upon the trial of an indictment for murder in the first degree the character of the homicide and the element of premeditation may be proved by circumstantial evidence, the jury being privileged to infer the existence of premeditation and the unlawful character of the homicide from the evidence submitted as they may infer the existence of any other material element in a criminal charge.

2. The conduct of the accused at or about the time the offense is alleged to have been committed may go in evidence to the jury as one means of establishing the fact and existence of his guilt.

3. A criminal assault made by the accused upon a third person a few minutes after the alleged homicide is admissible as a part of the *res gestae* when it appears that the accused regarded such third person as being the instigator of the

difficulty resulting in the homicide and the second assault was intimately and directly connected in his mind with the crime for which the accused was on trial.

4. Any evidence tending to throw light upon the character of the act under investigation is admissible such as motive, intent, absence of mistake and common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other and identity of the person charged with the commission of the crime on trial.

5. Objection to the introduction of evidence upon the ground that it is irrelevant and immaterial is so general in character that it will not be considered unless it be made to appear that the evidence sought to be introduced is inadmissible for any purpose.

A Writ of Error to the Circuit Court for Suwannee County; C. L. Wilson, Judge.

Affirmed.

*J. L. Blackwell* and *A. Lee Humphreys,* for Plaintiff in Error.

*Rivers H. Buford,* Attorney General, and *Marvin C. McIntosh,* Assistant, for Defendant in Error.

ELLIS, J.—The plaintiff in error was convicted in the Circuit Court for Suwannee County of the crime of murder in the first degree. The offense was alleged to have been committed in September, 1921. The person killed was Gertrude Ryan, Wife of Willie, *alias* Bobbie Ryan. There was no recommendation to mercy by the jury, and sentence of death was imposed. The judgment is sought to be reversed upon writ of error.

There are four assignments of error, two of which only are discussed; they attack the propriety of the admission in evidence of an account of a difficulty between the accused and his wife which occurred about two weeks before the homicide, and the conduct of the accused a few minutes after the homicide, in which he made a murderous attack with a pistol upon his deceased wife's second cousin Alberta Adams, at whose house the deceased woman frequently visited.

During the trial the defendant in the court below testified in his own behalf. His account of the transaction is not a denial of the homicide, but an admission of it, and contains both the elements of accident and self defense. The substance of his statement was that his wife was dissatisfied about money matters, that he gave her twelve dollars after asking her what she did with the sixty dollars she had taken over to Alberta Adams' house. That his wife left the house in a few moments, went to Alberta Adams' house and returned with a pistol in her hand. He succeeded in getting away from her and went on to church, but being late he went on to the house of some friend, returning home about ten o'clock; when he arrived home his wife renewed the attack following him into the room where he had taken refuge behind a door; she fired at him "three times from the back porch;" finally he "kinder got up from behind the door and caught her, and in the scuffle the pistol fired off and shot her. It hit on the side of the head." That wound produced her death.

There was evidence from which the jury might reasonably have inferred that the defendant's account of the transaction was more or less of a fabrication. As for instance the shooting occurred after eleven o'clock, the

-woman was in her night dress. After the shooting the defendant went to Alberta Adams' house and inquired if his wife was there? He was seen to leave his house where the killing occurred soon after the shooting and go to Alberta Adams' house and then return to his own. The reports of the pistol shots occurred in different sequence to that described by the defendant, and his statement to the sheriff after the arrest was different from the one made as a witness in his own behalf in several important details.

There were no witnesses to the transaction. Whether the homicide was an unlawful one and perpetrated by the defendant from a premeditated design to effect the death of his wife were facts the burden of proving which was upon the State, and circumstantial evidence the only medium of proof available.

The character of the homicide and the element of premeditation may be proved by circumstantial evidence, the jury being privileged to infer the existence of premeditation and the unlawful character of the homicide from the evidence submitted as they may infer the existence of any other material element in a criminal charge. See Lovett v. State, 30 Fla. 142, 11 South. Rep. 550; Barnhill v. State, 56 Fla. 16, 48 South. Rep. 251; Keigans v. State, 52 Fla. 57, 41 South. Rep. 886; Miller v. State, 75 Fla. 136, 77 South. Rep. 669; Dukes v. State, 14 Fla. 499; Robinson v. State, 69 Fla. 521, 68 South. Rep. 649; 6 Ency. Evidence, p. 691.

Three witnesses, Alberta Adams, Francis Davis and Anna Ford each testified over defendant's objection that a few minutes after the shooting the defendant came to Alberta Adams' house and attempted to kill her by shooting her with a pistol. The objection made was that the

evidence was "irrelevant and immaterial," "not part of the *res gestae*" and too "remote to be a part of the main altercation." These objections were overruled and exception in each case taken. They were all embraced in and made the subject of the third assignment of error.

Alberta Adams, the first of the three who was called testified without objection that she heard the pistol shots, went to her window and called Gertrude, the woman who was killed; that Gertrude did not answer, and the witness asked her husband and another person to go to town and get the sheriff. She then went on the porch and in about ten minutes the defendant came to her house and inquired if Gertrude was there? The witness asked who he was and he replied Willie Ryan. Thereupon Alberta told him that he knew Gertrude was not there, and then asked him who was doing the shooting at his house. Ryan did not reply, but went away. In a very short time he came back and asked the witness if her husband Math Adams was there. She first replied that he was not; then to contradict the impression made by that answer, told Ryan that she "would see' whether her husband had gone. The defendant then said she would do as well and "came on inside the gate with his gun in his hand." She arose to go in the house and before she could shut the door he was "standing right at the door." At this point defendant's counsel objected to the witness testifying to any assault upon her. The objection was overruled and the witness continued: "I reached in and try to slam the door shut and he stood right there and looked at me and said G— D— you I am going to kill every son of bitch of you that is big enough to die. Then I taken a nervous attack. He shot right through the curtains into the next room and the shots went in the wall. And then he left and went

that way.'' This witness received a wound over the left eye and temple.

Counsel point out that the defendant did not have the pistol when he called at the house of the Adams woman the first time, and therefore whatever caused him to have the trouble with Alberta must have arisen after the first trip. It is contended that in order for the defendant's act after the homicide to be admissible in evidence against him it should have been spontaneous, and not the result of deliberate design. The case of Stinson v. State, 76 Fla. 421, 80 South. Rep. 506, is relied upon in support of that proposition. The case is not authority for such a proposition. Stinson was being tried for the murder of Prevatt and it was sought to show what Stinson said immediately after he had shot Prevatt tending to exculpate him. What he said constituted a self serving declaration. The trial court excluded the evidence and this court held the ruling to be correct.

.The objection made in this case was that the evidence was immaterial, not part of the *res gestac,* and too remote. It was admissible as a part of the *res gestae* and as tending to show the defendant's state of mind shortly after he had killed his wife, and the intent with which the act was done. It was admitted as tending to show a criminal intent in killing his wife, malice and premeditation. The conduct of the accused at or about the time the offense is alleged to have been committed may go in evidence to the jury as one means of establishing the fact and extent of his guilt. See 13 R. C. L. 920; Greenfield v. People, 85 N. Y. 75; 8 R. C. L. 191.

In the case of Perry v. State, 110 Ga. 234, 36 S. E. Rep. 781, it was held that evidence that shortly after the mortal wound was inflicted defendant proposed to kill the doctor

who was on his way to attend the deceased, and that the defendant threatened to kill the person who protested against his killing the doctor, was admissible.

The act of the defendant in making an attack upon the woman Alberta Adams so soon after his wife had been killed tended to show that the woman Adams was associated in his mind with his wife's attitude toward him, particularly her conduct in trying to obtain money from him. The persistent effort of his wife to obtain money from him culminated in the tragedy in which according to his statement on the witness stand and his confession to the sheriff, the defendant had killed her. In that effort of his wife the defendant associated Alberta Adams, and after killing his wife whether by design, in the heat of passion or by accident, sought to inflict punishment upon the person whom he may have deemed morally responsible for the attitude of his wife toward him.

Whether his attack upon the Adams woman evinced guilt in the killing of his wife, or a frenzied mental condition of intense anger against the Adams woman as the cause of the quarrel between him and his wife in which the latter came to her death by accident was for the jury to infer as experience indicated. The circumstances of the attack upon the Adams woman were of such character as to point to the defendant as the person through whose agency the deceased came to her death.

Mr. Underhill in his work on Criminal Evidence says that the perpetration of a homicide is well calculated to create a perturbation in the mind of any one implicated in it that will manifest itself by the agitation subsequently noticeable in his conduct. Underhill's Criminal Evidence, Sec. 322.

The case of Smith v. Territory, 11 Okla., 669, 69 Pac. Rep. 805, cited by counsel for plaintiff in error does not support his contention. It is a case of self serving declarations made by the defendant after the commission of the crime and is in line with the decision in the case of Stinson v. State, *supra*. The case of Shaffner v. Commonwealth, 72 Pa. St. 60, text 65, is not analogous in that the State sought to show the guilt of defendant on the charge of murdering his wife by poison, by showing the circumstances of the death of a man some months before with whom the defendant Shaffner had had some transactions and who was the husband of a woman with whom the defendant was in the habit of indulging in libidinous intercourse at will. The court held that the general rule which prevents the giving in evidence against the defendant of a distinct crime unconnected with that laid in the indictment applied, and the evidence was held to be inadmissible. It was urged by the District Attorney that the relations between the defendant and the woman Susan afforded the motive for the taking off of the woman's husband and then the defendant's own wife, so that both murders were incidents of a general plan for obtaining certain life insurance of the woman Susan's husband and the free enjoyment by the defendant and the woman of their illicit intercourse; but the Supreme Court held that there was no evidence before the trial court as to the existence in the defendant's mind as to any such motives that would connect the two deaths. What Mr. Justice Agnew said in that case in support of the general rule that a distinct crime, unconnected with that laid in the indictment cannot be given in evidence against a prisoner is undoubtedly the reason for the rule and this court has many times affirmed it. See Mann v. State, 22 Fla. 600; Gafford

v. State, 79 Fla. 581, 84 South. Rep. 602; Roberson v. State, 40 Fla. 509, 24 South. Rep. 474.

The case at bar however in our opinion does not come within that rule, but lies within the rule announced by this court in Killins v. State, 28 Fla. 313, 9 South. Rep. 711, where the defendant who was indicted for the killing of one Margaret Welton immediately afterwards chased and tried to kill her mother Nancy Powell. The court held that the subsequent effort to kill Nancy was so directly and intimately connected with the crime for which the prisoner was on trial that it was proper to admit it for the purpose of showing the animus and intent of the defendant. See also West v. State, 42 Fla. 244, 28 South. Rep. 430.

The other cases cited by defendant's counsel are a little difficult to reconcile with the doctrine announced by this court in Killin v. State, *supra*, which announces the correct rule. In State v. Kennade, 121 Mo. 405, 26 S. W. Rep. 347, one of the cases cited, the defendant made a statement in writing purporting to give an account of the killing by him of the woman Cora Thompson, for whose murder he was tried. The statement contains the recital of the shooting at the same time of a man in self defense. That portion of the statement was excluded because it related to a subsequent and independent felony. An examination of the case reveals certain features which place it squarely within the general rule, besides the statement as to the shooting of the man under circumstances therein recited was exculpatory in character and therefore self serving. The case of Farris v. People, 129 Ill. 521, 21 N. E. Rep. 821, announces the doctrine approved by this court in the cases above cited, but in applying the doctrine the court's reasoning seems a little more difficult to follow.

The defendant Farris had a wife who obtained a divorce from him and married McGehee. She had not lived with defendant in four years. Less than two months after her marriage with McGehee the defendant entered the house of McGehee at dinner time, killed him by shooting him, and a short while afterwards forced Mrs. McGehee into an unoccupied house and committed rape upon her.

The court held that evidence of the latter crime was inadmissible. To us it appears to have been part of one transaction, one of a series of incidents in the plan to possess the body of the woman to slake the passion of his lust. In this State where the element of premeditation is necessary to be shown in order to establish the crime of murder, the passion of the man Farris for the wife of the deceased afforded a motive for the killing of her husband and evidence of the premeditated character of the act.

The case of State v. Taylor, 7 Idaho 134, 61 Pac. Rep. 288, was one in which the defendant became involved in a difficulty with another man in a house of prostitution owned by Mable Meade. After shooting the deceased the defendant ran out of the house and "took a shot" at Mable. Evidence of the latter act was excluded. The trial court admitted it over defendant's objection, but in doing so said that the object of the testimony is to show the character, disposition and action of the defendant at the time "as to being evilly disposed toward some one." The Supreme Court held the language of the court to be erroneous as an expression of opinion upon the evidence calculated to prejudice the jury against the defendant, and cited authorities. It also held the evidence to be inadmissible, but without citing authorities and giving any reason for the conclusion.

Any evidence tending to throw light upon the character of the act under investigation is admissible, such as motive, intent, absence of mistake, a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other and identity of the person charged with the commission of the crime on trial. See 6 Ency. of Evidence, p. 675n.

The prejudicial character of evidence tending to show the commission of other crimes necessitates a close scrutiny into its relevancy. Whether it tends to exculpate or convict, if it is relevent, that is, bears a certain relation to the crime charged so as to connect the two either as parts of the one transaction, explains or defines the character of the act charged as to motive or intention with which the act charged was committed, the evidence is admissible.

In the case at bar when the evidence of the attack upon the Adams woman was offered there was very little if any connection shown between the two transactions, except the statement of the Adams woman as to the conversation between her and the defendant when he called to inquire as to the whereabouts of his wife. The woman's reply and questioning of him as to the shooting at his house containing the crafty insinuation that she suspected him of wrong doing. That insinuation, however, may have impressed itself upon his consciousness and incited him to remove her as one likely to be antagonistic in the event of his arrest for killing his wife. But in the light of his statement on the witness stand the attack might very reasonably have been considered as evincing a state of mind inconsistent with the idea of premeditation in killing his wife. The attack upon the Adams woman may very reasonably have been regarded in the light of one who realizes that he had killed his wife in a quarrel to which his wife

had been encouraged by the Adams woman sought in his frenzied state of mind to administer what he may have considered as condign punishment to one who had officiously produced a breach between him and his wife. If the defendant had deliberately taken his wife's life he would in all likelihood not have harbored the resentment against the Adams woman. It was the jury's province however to draw its own inferences from the incident applying their own knowledge of man and his emotions.

The evidence was admissible so the assignment of error is not sustained.

Alberta Adams, in reply to a question asked by the State Attorney upon re-direct examination said that she had "seen trouble" between the defendant and his wife, that it was on the 12th day of September. Thereupon the State Attorney instructd her to "go ahead and tell about that." The defendant's counsel objected to such narrative upon the ground that it was irrelevant and immaterial. The objection was overruled and the action of the court is assigned as the second error. The witness then recited the details of a transaction which she said occurred between the defendant and his wife about sixteen days before the alleged shooting, highly prejudicial to the defendant, and in which she represented herself as peacemaker and good friend to both parties, but through which nevertheless runs a vein of conscious influence upon her part over the actions of Gertrude Ryan, whom she induced to leave the witness' house and go with her husband, notwithstanding her fear of him according to the witness and the hostility and cruel anger which the witness said he exhibited toward his wife. There was no motion to strike the story of that witness Adams and in view of the too general objection the assignment should fail unless the

astounding narrative of the woman was inadmissible for any purpose. See Griswold v. State, 77 Fla. 505, 82 South. Rep. 44.

The criticism that the testimony of the witness went too fully into the details of the previous quarrel between the defendant and his wife is not justified. It is a mere statement of an exhibition of uncalled for and cruel anger exhibited by the defendant toward his wife. If the witness was to be believed the story showed a feeling of hostility on the part of the defendant against his wife which was contradictory of his statement that the shot was the result of accident.

There are no other assignments of error discussed. Finding no error in the record the judgment is affirmed.

TAYLOR, WHITFIELD AND WEST, J. J., concur.

BROWNE, C. J., not participating.