BIRD, JOHN U., Associate Judge.
The appellant was indicted on the 16th day of January, 1956 for murder in the first degree of Lydia Hutchinson in Palm Beach County and placed on trial, which resulted in a mistrial; and on the 4th day of June, 1956 the case was retried and resulted in a conviction of murder in the second degree and defendant was sentenced to the State Prison.
The homicide is shown to have taken place about 3 A. M. on the 4th of January, 1956 at the home of the parties shortly after they came from the steak house where Mrs. Hutchinson was employed. Both had been drinking moderately.
About 5 P. M. of that date the appellant called a friend and told him that he had been shot by his wife, who had then shot herself, and he asked that the officers be notified. The officers arrived at the home shortly after that and found the appellant lying on the bed, very bloody, with a severe wound in the face and Lydia Hutchinson sitting in a chair apparently asleep, but dead. The appellant at that time stated, among other things, that when he and his wife arrived at home that morning he went to> the kennel to care for the dogs which they were then keeping, and that in about ten minutes he entered the house when a voice, which he took to be his wife’s, spoke to him and he was shot; that he immediately became unconscious and so remained except intermittently until the late afternoon, when he was able to reach the telephone and notify his friend. The appellant was taken to the Good Samaritan Hospital, where upon examination it was found that he had been shot in the cheek, the bullet apparently entering from the corner of the jaw and coursing upward through the cheek and between the ear and eye. A 30-caliber rifle was found on the floor in the room near the body of Lydia; also two expended shells were found, one on the floor and the other in the chamber of the rifle, and two un-expended shells in the magazine. One of the bullets passed through the ceiling in the room and the roof directly above, indicating a vertical course and apparently was the same that passed through defendant’s cheek. The other bullet apparently took a horizontal course, entered the body of Lydia Hutchinson close to the navel, passing through the right lobe of the liver, in front of the gall bladder and into and through the duodenum, severing the vena cava, which is the largest vein in the body located near the spinal column, passed through the spinal column in the region of the second lumbar vertebra and came to rest in the padding between the back of the chair and the body. This bullet also passed into and out of the little finger of her right hand. When the body was removed the bullet fell to the seat of the chair. Powder burns were found on or around the wound of the defendant, but none on the wound or clothing of the deceased.
There were other facts and circumstances surrounding the homicide shown, but which we deem unnecessary to elaborate here.
It appears from the record in this case that the appellant-defendant and Lydia Hutchinson decedent lived somewhat tempestuously as husband and wife from sometime in 1954 to her death on the 4th day of January, 1956.
On the early morning of December 6, 1955, Lydia Hutchinson appeared at the home of Doris Lee Sullivan and her husband, which was situated across the street or road some six or seven hundred feet *46 from the Hutchinson home, seeking help and protection. She was without shoes and clad only in a robe. She was apparently highly hysterical and in great pain, and stated to Mrs. Sullivan that the appellant had just forcibly stuffed red pepper into her vagina. Judge Carry, Justice of the Peace, was called and when he arrived with an officer a peace warrant was issued for appellant upon affidavit of decedent and he was arrested, carried to jail and later released on bond. Lydia was carried to a doctor for treatment. After one or two trips to the Justice of the Peace Court, at which times the defendant did not appear, the decedent withdrew the charge, and shortly before her death they renewed their relation and were living together at that time.
At the first trial of this case, evidence of the pepper episode was not permitted, apparently for the reason that the State could not place the parties together on the night of the incident. At the second trial, the one we are now reviewing, the State did show that the defendant, and no one else, was with decedent at their home at the time of this incident, that they had some difficulty and that she left the home screaming; so the Court then permitted the witnesses to testify, but only as to their knowledge of the incidents and their observations, and studiously precluded any testimony of a hearsay nature. It did permit testimony of Mrs. Sullivan and the doctor of their observation of the affected parts and the red pepper found on her person, and permitted Mrs. Sullivan to testify that she found crushed red pepper in the Hutchinson home the next day.
The admission of this testimony of the pepper episode forms a basis for the first point raised by appellant for reversal, and this has caused us some concern. It is a well settled and salutary rule of law and one necessary to the preservation of human rights, and is supported by many cases, that distinct and unconnected acts, behaviours and offenses which have no connection with the offense being tried and sheds no light thereon are inadmissible, but where prior acts, threats or offenses do shed light upon or show motive, intent or identity they may be admitted as circumstances bearing upon these points.
This pepper incident occurred less than one month before the homicide; we hold it was not too remote, and evidence thereof was properly admitted as bearing, upon and tending to show motive, malice and depravity of mind, which must be proven in a case such as was on trial.
The Supreme Court said, in the case of Talley v. State, 160 Fla. 593, 36 So.2d 201, 204:
“In many criminal offenses, intent is the essence of the crime, and where not established, the prosecution fails. In crimes malum in se, intent is presumed, but where it is not a matter of presumption, it must be proven as any other fact. Where intent is material,, the acts, declarations and conduct of the accused are relevant to show that: intent. Hence, evidence of collateral: offenses is admissible on the trial of the-main charge to prove intent. To be admissible as relevant, such offenses need not be exactly concurrent. If they are within such time or show such relation-to the main charge as to make connections obvious, such offenses are admissible to show intent. Evidence of" collateral offenses which is inseparably inter-woven with the offense charged- and which also show intent is admissible. Wharton’s Criminal Evidence,. Vol. 1, 11th Ed., pp. 516-520, par. 350.
“Evidence of the motive which suggests the doing of the act constituting-the crime charged is always admissible and this is true even though such evidence tends to show the commission of another crime, or constitutes proof of the commission of another crime, pro *47 vided the time which has elapsed between the crime charged and the offense concerning which the testimony is offered is not too remote. Evidence of similar acts affords the surest basis for inference that the crime charged was committed by the accused. Wharton’s Criminal Evidence, Vol. 1, 11th Ed., pp. 523-527, par. 351.”
In Ryan v. State, 83 Fla. 610, 92 So. 571, 574, the Court said:
“Any evidence tending to throw light upon the character of the act under investigation is admissible, such as motive, intent, absence of mistake, a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other and identity of the person charged with the commission of the crime on trial. See 6 Ency. of Evidence, p. 675, note.
“The prejudicial character of evidence tending to show the commission of other crimes necessitates a close scrutiny into its relevancy. Whether it tends to exculpate or convict, if it is relevant — that is, bears a certain relation to the crime charged so as to connect the two either as parts of the one transaction, explains or defines the character of the act charged as to' motive or intention with which the act charged was committed — the evidence is admissible.”
The next point raised is based upon the refusal of the Court to declare a mis-trial because the Court reporter was unable to produce his notes of a former trial of this cause, such notes being desired for impeachment of two witnesses. The impeachments suggested by counsel appear to us to be immaterial and trivial; therefore, this assignment must fail.
The next point raised by appellant is predicated upon the cross-examination of defendant by the State Attorney. No specific incident of claimed oppression is set out in this assignment or otherwise specified, and a careful reading of such cross-examination discloses none; so this point must also fail.
The evidence in this case was wholly circumstantial, but clear and convincing and fully sustains the verdict. The charges of the Court were clear and ample; the defendant represented by able counsel, and the case fairly and skillfully tried and no error found; the judgment and sentence is therefore affirmed.
KANNER, C. J., and SHANNON, J., concur.