ALLEN, Judge.
The State moved to dismiss this appeal on jurisdictional grounds, which motion was previously deferred until the case was considered on the merits. Due to the circuit court clerk’s office being closed, the notice of appeal was filed one day late and under the factual situation existing in this case, we shall deny the State’s motion to dismiss and consider this appeal on the merits.
Appellant is appealing his conviction of the crime of first degree murder upon which he was sentenced to life imprisonment based on the jury’s recommendation of mercy.
Appellant admittedly, on January 9, 1961, shot and killed his mistress, Eulee Oliver, and her alleged paramour, Isaiah Hicks. At the trial, appellant attempted to establish in defense or in mitigation that the killings took place at the same time and were provoked by appellant’s passions being inflamed upon his finding the victims in a compromising situation. The State attempted to prove and introduced evidence that the killings would have had to have taken place at least some seven hours apart based upon post mortem examination of the two bodies. Other evidence was introduced by the State tending to show that decedent, Eulee Oliver, was shot at about 3 A.M. on the morning of January 9, 1961, and that appellant was seen with decedent Hicks, then alive, later in the afternoon of the same day.
The appellant did not testify in his own behalf. During the State’s closing argument the State’s Attorney made the following statements to the jury, quoted from appellant’s brief:
“We know he murdered the man, and he doesn’t deny it * * * and then he comes up here and tells the story.
“he doesn’t * * * he doesn’t deny killing her.
“if the Defendant’s story was true that the woman was on the bed when he shot her we would like his counsel to explain to you how Blood Type A, which we presume to be her blood, would get on a chair across the room, how Blood Type A would also find itself on this nightgown.
“I want them to tell you why that matchbox would stay there, Gentlemen, on that man, and that knife.
“ * * * his theory was then to set this thing up to look like something had been going on. * * *
“Now no doubt the defense would want you to think that he was in a heat of passion, he was enraged * * * it will no doubt be pointed out to you the conditions that he found them in * *. The State will claim to you that there has certainly been no evidence to show anything other than first degree murder.”
As the appellant so aptly states in his brief, the appellate courts of this state have established by a long line of decisions that it is reversible error for the prosecuting attorney to comment on the failure of the accused to testify in his own behalf. See Gordon v. State, Fla.1958, 104 So.2d 524; Milton v. State, Fla.App., 127 So.2d 460; Ard v. State, Fla., 108 So.2d 38; Trafficante v. State, Fla., 92 So.2d 811.
The factual situation in the instant case differs from the cases above cited and in *146 both the remarks of the state’s attorney and previous remarks of defense counsel. One of the appellant’s attorneys, in his argument to the jury, said:
“Gentlemen of the jury, I’m going to make my argument short — going into a few facts, and you gentlemen may wonder why the defendant was not put on the stand. The court will instruct you that that is not necessary.' The fact we did not put him on cannot be discussed — why we didn’t put him on cannot be discussed by either side. We had the opportunity to put him on, but we didn’t.”
The record divulges that defense counsel further called attention to the fact that the defendant had not stated anything in the courtroom.
The State, in its brief, comments that the state’s attorney did not refer to the failure of the defendant to take the stand, but was referring to conversation which appellant had with the arresting officer and to the story related by the witness Milligan, together with the statements made by appellant’s counsel at the trial to the effect that the shooting was done by appellant but not from a premeditated design to effect anyone’s death.
We do not need, however, to interpret the comments of the state’s attorney in this case since defense counsel made it very clear to the jury that the defendant had not taken the stand to testify in his own behalf. We hold, therefore that the remarks made by the state’s attorney did not constitute reversible error.
The second point of the appellant is:
“Whether the trial court erred in adjudging the defendant guilty of murder in the first degree when there was insufficient evidence upon which the jury could base its conviction.”
There was no dispute that the appellant shot and killed Eulee Oliver and her alleged paramour, Isaiah Hicks. The appearance of the two bodies left the impression that their death took place at the same time. However, there was testimony adduced by the State which, if believed by the jury, established that the killings took place some twelve or more hours apart.
Clara Mae Brown testified that around 3 o’clock in the morning of January 9th, 1961, she heard three shots. She further testified that she did not hear the decedent, Eulee Oliver, playing her radio as was her usual practice. She further testified that she saw decedent, Hicks, and the defendant below pass by her house at about 1:30 o’clock in the afternoon of the day in question on their way to appellant’s house.
Another witness, Mary Lou Norwood, also testified that she saw Hicks and the defendant pass by her house at approximately 1:30 o’clock on the day in question. She further testified that at the time she saw Hicks and appellant, appellant was shooting a pistol. There was other corroborating testimony as to Hicks and the appellant being together during the day.
Robert McKinney, a police officer, testified he was with another police officer, Clen-denny, when the appellant turned himself in and on an examination of one of these officers at the trial the following testimony was presented:
“Q. Did he say anything to you while you were taking him to the cell?
“A. Yes sir, he did. As I was going back to lock him up, I asked Willie on the way back — we were rather in a hurry and I asked him, I said, ‘Willie, are you sure you killed them?’ And he said, T am positive that I killed them,’ and then we kind of laughed, and I locked him up and I went on.
“Q. He laughed after he said he was positive he killed them?
“A. Yes sir he did.”
An agent of the Florida Sheriff’s Bureau, Lester Thompson, testified that he had a *147 discussion with the appellant in the Lees-burg jail to the following effect:
“A. He related to me that he had been drinking on the supposedly date that this occurred, and he had gone into town to buy some whiskey and wine and that on his return, when he entered the home where this occurred, as he opened the door the deceased Hicks was on the side of the bed and the woman was naked in the bed and as he opened the door, Hicks stood up, and as he stood up he pulled out a knife and he pulled out his pistol and shot them.
“Q. Shot both of them?
“A. He shot Hicks first and then he shot Eulee, the colored woman.”
Dr. Paul Tumlin, the physician who examined the bodies of both Eulee Oliver and Isaiah Hicks, testified that he examined these bodies between 8:00 and 8:30 o’clock P.M. on January 9th. He further testified that both of these bodies died very shortly after they were shot. Dr. Tumlin further testified that in his opinion Isaiah Hicks died at approximately 3 o’clock P.M. on January 9th and that Eulee Oliver’s death took place at least twelve hours prior to his examination or at least seven hours prior to the death of Isaiah Hicks.
There was other testimony appearing in the record which we hold was sufficient to sustain the conviction of the appellant for first degree murder.
 The existence of premeditation is often impossible to prove by direct testimony but may be inferred from the circumstances surrounding the death of a party. See Crawford v. State, 146 Fla. 729, 1 So.2d 713; Ryan v. State, 83 Fla. 610, 92 So. 571; Forehand v. State, 126 Fla. 464, 171 So. 241; Mayo v. State, Fla., 71 So.2d 899; Lowe v. State, 90 Fla. 255, 105 So. 829. Premeditated murder is a question of fact for the jury. Larry v. State, Fla.1958, 104 So.2d 352.
The appellant also claims:
“Reversible error was committed when the trial court allowed the state attorney in his closing argument to comment over the defendant’s objection that the victim’s blood was type A when there was no evidence in the record to support it.”
The state’s attorney argued to the jury that one of the victim’s blood type was “A”. He based this argument on the testimony of a witness who was the Chief of the Crime Laboratory, Florida Sheriff’s Bureau. The witness testified that he had examined some linoleum that was directly under the head of the body of Isaiah Hicks and that the blood examined was blood type “0’. The witness also testified that he examined a woman’s nightgown found in the room where the two bodies were found, which nightgown was wadded up under the bed .on which lay the body of Eulee Oliver, and that this nightgown had been in the custody of the police authorities since the bodies were discovered. The nightgown had type “A” blood on it. Also the witness testified that there was type “A” blood on a chair found in this same room about a foot from Hicks’ head.
The state’s attorney argued that the deceased, Eulee Oliver, probably was in this nightgown with the blood on it at the time she was killed, and that a chair introduced in evidence also had blood on it, the blood on both of these articles being type “A”.
The prosecutor stated, “ * * * If the defendant’s story was true that the woman was on the bed when he shot her, I would like his counsel to explain to you how blood type A, which we presume to be her blood, would get on a chair across the room, how blood type A would also find itself on this nightgown * *
We hold that under the evidence given the prosecuting attorney did not commit reversible error in drawing the attention of the jury to his conclusion from the evidence that the decedent Eulee Oliver’s blood was type “A”.
*148 The final point raised by the appellant is:
“Whether reversible error was committed when the trial court, over the objection of the defendant, allowed expert testimony to be introduced that was based on hearsay.”
Dr. Paul Tumlin testified as to the approximate time of death of both of the decedents. The theory of the defendant’s defense was that Eulee Oliver and Hicks were found in a compromising position by the defendant and both of them were killed at the same time. The prosecution endeavored to convince the jury that Eulee Oliver was killed several hours before the defendant killed Hicks. Dr. Tumlin testified that Eulee Oliver was shot twice and that death came also instantaneously as a result of a bullet entering her right temple. He testified that Hicks was killed by a bullet which entered his neck then richocheted through the lower portion of the cranial vault. He further stated that in his opinion Hicks could have lived a maximum of five minutes after the infliction of his wound. The prosecuting attorney asked this question:
“Q. If neither body had been embalmed, what would be your estimate from the rigor [mortis] as to the death of Isaiah Hicks?
“A. His death probably occurred—
“MR. CHAMPION: Your Honor, I believe the witness stated that the body of Eulee had been embalmed and therefore it seems to me the question is improper in view of the fact he says the question was ‘if either one had not been embalmed’ and the witness stated that one had been embalmed.
“MR. OLDHAM: The witness did not state that.
“THE COURT: Objection overruled.
“MR OLDHAM, continuing questioning:
“Q. Now, what would be the estimate time of death of the body of Isaiah Hicks as the result of your examination at 8 o’clock that night?
“A. The time of death would have been around 3 o’clock in the afternoon.
“Q. So five hours before you examined the body?
“A. Five hours before.
“Q. What would be the estimate time of death as to the body of Eulee Oliver, based upon your examination?
“A. In excess of 12 hours.
“Q. So it would have had to have been prior to at least 8 o’clock that morning, is that right? In excess of 12 hours ?
“A. In excess of 12, yes.
“Q. So the body of Eulee Oliver you know as a matter of examination death would have occurred at least some 7 hours prior to the time of the death of Isaiah Hicks, is that correct?
“A. Yes sir.”
Clyde Dabney, the owner of the funeral parlor at which Dr. Tumlin conducted his examination of the bodies of Eulee Oliver and Isaiah Hicks, testified that neither of the bodies had been embalmed prior to the examination of them by Dr. Tumlin. The evidence discloses that at the time Dr. Tum-lin conducted his examination of the body of Eulee Oliver he believed that she had been embalmed. He subsequently learned that she had not been embalmed at this time, and gave his opinion then that her death occurred some seven hours prior to the death of Isaiah Hicks.
We are of the opinion that the fact that Dr. Tumlin did not know whether the body had been embalmed at the time of his examination or not, since testimony was adduced that it was not embalmed at *149 that time, did not preclude Dr. Tumlin from then testifying as to the estimate of the time of Eulee Oliver’s death. See 32 C.J.S. Evidence .§ 521, p. 219.
We find no reversible error in the record and thus affirm the lower court.
Affirmed.
SHANNON, C. J., and WHITE, J., concur.