EVANS THOMAS v. STATE.

181 So. 337.

Opinion Filed September 27, 1937.
On Rehearing May 28, 1938.

*Frank Redd* and *John B. Singeltary,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BROWN, J.—Plaintiff in error, Evans Thomas, was convicted in the Circuit Court for Manatee County of the offense of armed robbery committed against one Hansel Watson, motion for new trial was overruled, judgment of conviction was entered and the defendant sentenced to imprisonment for ten years in the State penitentiary. The cause is now before us on writ of error to the judgment of conviction.

The question which has been argued here is whether or not the trial court committed reversible error by permitting over the objection of counsel for the defendant the admission of the testimony of the witness Berry James detailing the facts and circumstances of the assault and rob-

bery perpetrated upon him immediately after the defend-
ant had assaulted and robbed Hansel Watson.

Hansel Watson testified that about nine o'clock on the
night of September 28, 1935, he was held up and robbed
between Clark and Church Streets in Palmetto, Florida, and
that $2.60 in cash and his watch and some meat that he
was taking home were taken from him, at the point of a
pistol. Then he testified that his assailant "drove me fur-
ther on round on Clark Street, and drove me out and in a
little old stand what they had out there and then he turnt
me loose and said, 'all right, you go straight on acrost to
the street where that light is,' and I started on acrost there,
and as soon as I got like as far as from here to the corner
of the building there (indicating) from him he jumped out
to run and he went acrost this way (indicating) and just as
he got to the street he met up with this other fellow and
hilt him up and said 'hands up' and he said 'Mr. don't
shoot me.' "

At this point counsel for defendant objected on the
ground that this testimony as to the second hold-up was
not material or relevant to the charge upon which the de-
fendant was being tried. The court overruled the objec-
tion, stating to the witness that he might tell anything that
he saw after that, that the defendant did, but not what he
said. To this ruling the defendant excepted.

The witness then testified that he had no weapon, and
"he tore out to running" and went across the street and
around to the filling station to get the police.

He said that he had known the defendant about four
weeks at the time, and knew him when he saw him, but
did not know his name and that he saw him later on that
night when the defendant was arrested by the police, and
that he pointed him out to the police.

So according to this uncontradicted testimony of Hansel Watson, the second robbery was committed immediately after the first by the same person that robbed him. He further testified that the robber had on dark pants, a light shirt and a light cap. The testimony indicates that the robber had forced Watson to go to a point near Berry James' house.

The State then put Berry James on the stand, who testified that he was held up on Clark Street, in front of his house, on a little street that "comes off kinder in front of my house on Clark Street." The defendant objected to the State going into that, on the ground that an information had been filed against Evans Thomas on the part of Berry James, and that it was a separate case in which James claims he was held up. The Court said:

"It may be received insofar as it may be considered by the jury in corroboration or for identification. Objection overruled; exception noted."

Berry James was asked the following question:

"Do you know who held up Hansel Watson?"

He answered: "No, sir, I don't know who hilt him up, but I know this man comes straight from him to me, and hilt me up."

He testified that he had known the defendant for a long time, and that it was the defendant who held him up; that he had started back home, just after leaving on an errand for his wife, for the purpose of getting some money; that he thought it was after eight o'clock around half past eight or nine o'clock. The witness was then permitted to testify to all of the details of the second robbery, which he did with great gusto and in the picturesque language characteristic of his race. In the course of this testimony it developed that he bravely resisted the robber and that

they had had a very severe "tussle," in the course of which the witness caught hold of the barrel of the pistol and pulled it out, and that after the struggle his assailant fled, leaving his cap on the ground, which cap was identified by the witness before the jury. He testified that it was a dark night but that there were small electric lights on the porches of two of his neighbors near by and that the defendant had on dark pants, a light shirt and a light cap, and that it was Evans Thomas who held him up. That he had known Evans Thomas "a long time."

When Thomas was arrested an hour or so later, at a little cafe some blocks away, the officers found that there was just a small amount of change on his person and a little wrist watch; not the watch which belonged to Hansel Watson.

The defendant introduced the testimony of several of his friends and neighbors who testified that at the time in question the defendant was in a little settlement called Memphis, where he, the defendant, lived, a mile or so from the scene of the crime. The defendant testified to the same effect and added that he did not know anything about either one of the offenses which had been testified to by the witnesses for the State.

The only question involved is whether or not the trial judge committed reversible error in admitting the testimony with reference to the second robbery above briefly outlined.

The principle is well settled that as a general rule evidence of another and distinct crime committed by a defendant, in no way connected by circumstances with the one for which he is being tried, is inadmissible. And it must be admitted in this case that the second robbery, testified to by the State's witness, was a separate and distinct crime (for which a separate information had been

sworn out) from the first robbery for which the defendant was being tried.

In the case of Wallace v. State, 41 Fla. 507, 26 So. 713, this Court held that:

"Evidence of another and distinct crime committed by a defendant, in no way connected by circumstances with the one for which he is being tried, is inadmissible; but proof of any fact with its circumstances, even though amounting to a distinct crime, if it has some relevant bearing upon the issue being tried, is admissible.

"Evidence of defendant's acts prior or subsequent to the alleged offense which logically tend to prove the criminal intent or guilty knowledge, where they are material, is admissible, even though such evidence tends to prove the commission of another offense. Likewise, where the crime charged is one of a system of criminal acts occurring so near together in point of time and so nearly similar in means as to lead to the logical inference that they are all mutually dependent and committed in pursuance of the same deliberate criminal purpose and by means planned beforehand, evidence of such other acts is admissible even though those acts amount to another criminal offense. But such evidence is not admissible for the purpose of proving that defendant committed the crime charged against him, but to show his purpose, plan, intent or knowledge, or to show that the acts charged against him were not the result of accident, mistake or inadvertence, or to rebut a defense which would otherwise be open to him."

In the case of Nickels v. State, 90 Fla. 659, 106 So. 479, the law governing the question here presented is very clearly set forth in the opinion of Mr. Justice STRUM in that case, as follows:

"Evidence that the defendant has committed a similar crime, or one equally heinous, will frequently prompt a more

ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the mind of the juror to believe the prisoner guilty. Generally, therefore, it is harmful error to admit evidence of other or collateral crimes independent of and unconnected with the crime for which the defendant is on trial. Robertson v. State, 40 Fla. 509, 24 South. Rep. 474; Gafford v. State, 79 Fla. 581, 84 South. Rep. 602; 16 C. J. 586; 8 R. C. L. 210.

"To this general rule, however, there are several distinct exceptions, well supported by precedent, amongst which are that such evidence is admissible when it is relevant as part of the *res gestae,* or tends to establish the identity of the person committing the crime laid in the indictment, or where it is impossible to give a complete or intelligent account of the crime charged without referring to the other crime. The existing exceptions, however, ought to be carefully limited and guarded by the courts, both in number and in scope.

"Supporting the rule and exceptions above mentioned, see Killins v. State, 28 Fla. 313, 9 South. Rep. 711; Oliver v. State, 38 Fla. 46, 20 South. Rep. 803; West v. State, 42 Fla. 244, 28 South. Rep. 430; Ryan v. State, 83 Fla. 610, 92 South. Rep. 571; Wallace v. State, 41 Fla. 647, 26 South. Rep. 713; Robertson v. State, 40 Fla. 509, 24 South. Rep. 474; 16 C. J. 609, *et seq.;* Wharton's Crim. Ev. p. 31; Underhill's Crim. Ev. p. 151. See also the exhaustive annotations appended to People v. Molineaux (168 N. Y. 264), 62 L. R. A. 193. Supporting the exceptions as applied to prosecutions for rape, see: People v. Rardin, 255 Ill. 9, 99 N. E. Rep. 59; State v. Taylor (Mo.) 22 S. W. Rep. 206; State v. Taylor, 118 Mo. 153, 24 S. W. Rep. 449; Thompson v. State, 11 Tex. App. 51; Davis v. State (Tex. Crim. Ap.), 23 S. W. Rep. 685; Parkinson v. People, 135 Ill. 401, 25 N. E. Rep. 764; 10 L. R. A. 91; Oakley v.

State, 135 Ala. 15, 33 South. Rep 23; Harmon v. Territory, 15 Okla. 147, 79 Pac. Rep. 765."

See also Suarez v. State, 95 Fla. 42, 115 So. 519; Green v. State, 122 Fla. 307, 163 So. 712; and Rayan v. State, 83 Fla. 610, 92 So. 571, which cases while not strictly in point, throw some light upon the questions here involved.

The cases of Foy v. State, 115 Fla. 245, 155 So. 657, and Mann v. State, 22 Fla. 600, which are among the cases cited by plaintiff in error, are not, in our opinion, strictly in point here.

The testimony in full of Berry James might have been admissible on rebuttal by the State of the testimony of the defendant and his witnesses tending to establish an alibi, but we do not consider that the testimony of this witness going into all of the details of the second robbery and the struggle he had with his assailant should have been admitted upon the direct examination of said witness when the State was making out its case in chief. The question of the identity of the man who robbed Hansel Watson was the most material question of fact in the case, in view of the fact that the robbery occurred at night, and without the aid of other evidence the jury might not have considered Hansel Watson's testimony sufficient proof of such identity. But in view of Watson's testimony that the man who robbed him almost immediately thereafter went across the street and held up another man, and Berry James' testimony making it quite plain that he was that other man, we think it would have been entirely proper for the court to permit Berry James to testify that he was held up at that time and place, that the man came directly from Watson to him, and that he knew the man who held him up, and that it was the defendant Evans Thomas; also his testimony as to the pistol, and the cap left on the ground by the retreating robber. This much at least would have been admissible

and relevant on the question of identity of the man who had assaulted and robbed Hansel Watson, and comes clearly within the law as laid down in this State in the case of Nickels v. State, *supra*.

It will have been noted also that in two of the above cited cases it was held that evidence of another and distinct offense is some times admissible "to rebut a defense which would otherwise be open to the defendant." Undoubtedly the State can rebut the testimony of a defendant tending to establish an alibi even if to do so it becomes necessary to introduce evidence which shows the commission of an entirely distinct offense from that for which the defendant is on trial.

The weight of authority in other jurisdictions seems to support our position here. "One of the exceptions to the settled rule as to admission of evidence as to a collateral crime is when evidence of an extraneous crime tends to identify the accused as the perpetrator of the crime charged." 6 Encyc. of Evid. 577; People v. Molineux, 168 N. Y. 268. When an alibi is disputed, it is admissible to prove a collateral offense to prove that at the time the accused was in the vicinity. Wharton on Criminal Ev. (8th ed.) paragraph 47, note 1; 21 Cyc. 900, 901; State v. Johnson, 111 La. 835 and case cited; Richardson v. State, 145 Ala. 46, 41 So. 32; State v. Bates, 81 S. W. 408; Johnson v. Commonwealth, 115 Pa. 369, 9 Atl. 78.

A good discussion of the question is set out in the case of People v. Jennings, 96 N. E. 1077, 252 Ill. 534. As stated in this case, quoting from State v. Adams, 20 Kan. 311:

"Whatever testimony tends directly to show the defendant guilty of the crime charged is competent, although it also tends to show him guilty of another and distinct offense. A party cannot, by muliplying his crimes, diminish the volume of competent testimony against him."

It therefore appears that the only possible tenable objection to the admission of the testimony of Berry James was that he was allowed to describe the second robbery in minute detail. However, it is a close question as to whether this was reversible error. This testimony tended to rebut the alibi testimony which was later introduced by the defendant and tended to show what opportunity Berry James had to see and identify his assailant. The judge, also, in his charge to the jury clearly instructed the jury that the defendant was not charged with the robbery of Berry James and that the testimony tending to sustain such a charge could be considered by the jury only in so far as it might aid them in determining the identification of the person who, if any person, they might find from the evidence had robbed Hansel Watson as charged in the indictment. We hold, therefore, that the admission of this testimony did not *per se* constitute reversible error.

The writer is inclined to think that this plaintiff in error should, however, have been granted another trial because of one of the grounds of the motion for a new trial, which motion was denied by the court. One ground of the motion alleged that the defendant and his counsel had been taken by surprise by the testimony of Berry James and for that reason were unprepared to offer and present to the court and jury at said trial evidence which could have been procured and offered in court showing that Berry James could not and did not identify the person committing the robbery upon him, that he did not in fact know who it was, and that he had afterwards stated that he did not recognize Evans Thomas and did not identify him as the person committing the robbery, and that he had never so identified him until Thomas had been pointed out to him by Hansel Watson as the person who had committed it. But the other members of the Court are of the opinion

88

that no error was committed in this regard and that the judgment of the court below should be affirmed.

Judgment affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and CHAPMAN, J. J., concur.

### ON REHEARING.

PER CURIAM.—A petition for rehearing having heretofore been granted in this cause and the Court having heard further argument by counsel for the respective parties upon such rehearing and having further considered the record in the cause in the light of the entire argument presented, it is thereupon ordered and adjudged by the Court that the judgment of affirmance entered in this cause on September 27, 1937, be adhered to and that the judgment of the Circuit Court herein be and it is now hereby reaffirmed.

WHITFIELD, TERRELL, BROWN, BUFORD, and CHAPMAN, J. J., concur.