54 So.2d 36 (1951)
SCHIFF
v.
SCHIFF.
Supreme Court of Florida, Special Division A.
May 29, 1951.
On Rehearing in August 28, 1951.
Loftin, Anderson, Scott, McCarthy & Preston, William C. Steel, Miami, for appellant.
George C. McCaughan, Miami, for appellee.
On Rehearing in Division A August 28, 1951.
PER CURIAM.
Affirmed.
SEBRING, C.J., and TERRELL, CHAPMAN and ADAMS, JJ., concur.
THOMAS, HOBSON and ROBERTS, JJ., dissent.

On Rehearing
TERRELL, Justice.
May 5, 1951, the majority of this court in a Per Curiam order affirmed the chancellor's decree granting the petition of appellee to reduce the alimony of appellant, his former wife, from sixty-eight to forty-five dollars per week. I joined the majority in the order making that reduction.
On petition for rehearing, I am convinced that I was in error in so doing. The petition for rehearing was less than five pages, but it met every requirement of good pleading. It was concise but full aplenty, went straight to the issue, and was a very effective pleading. It impresses one with the danger of burdening a brief, pleading or record with unnecessary details that may tend to conceal rather than clarify the issue in the case. Paraphrasing a line of wisdom from one of the old masters  when one's "reasons are as two grains of wheat hid in two bushels of straw," even a judge may miss the wheat no matter how diligently he may search. Abraham Lincoln named it well in one of his addresses to the jury  now, gentlemen, let us brush aside the dead wood and get right down to hard pan. That is what the petition for rehearing did. Every pleading, record and brief should follow this pattern.
Another contributing factor to my error was the announcement by counsel that "this whole case is a simple accounting problem." Accounting a man's ability to pay alimony means little more than to add his sources of income, subtract his business expenses, estimate the living requirements of each, then award the wife a reasonable sum from the husband's balance. I thought any chancellor could do that, but it now appears that when it comes to adding and subtracting money some of them are not experts. So much for my excuse for falling into error. Now let us see what the record shows.
Mr. and Mrs. Schiff made an agreement for alimony and support after due deliberation and consultation with counsel. Following said agreement, Mrs. Schiff secured a divorce and Mr. Schiff secured a new wife. The alimony agreement was made part of the divorce decree. The chancellor may on examination of the husband's sources of income modify alimony decrees if there is a strong showing that the husband's ability to pay has depreciated. Section 65.15, F.S.A. On consideration of the petition for rehearing, in the light of the *37 record, I am now convinced that no such showing is made.
The law governing a man's obligation to an ex wife as contrasted with that he owes a wife in esse has not been extensively explored in this country. Men generally avoid the complications arising from such matrimonial detours by a property settlement before they put away the old wife. Schiff was not so wise; he made an agreement with Mrs. Schiff to pay her a fixed sum every month and then contracted marriage with his new model wife. He had lived with the first wife twenty-four years in peace and harmony. She had borne and reared two fine children to bear the Schiff name, she aided Schiff in all he undertook and helped him provide the cushion that no doubt attracted Mrs. Schiff, the second. Mrs. Schiff, the second, entered the picture with knowledge of these equities and the fact that her claim matured lately.
On consideration of Schiff's assets, the digits reveal that he has an investment of $20,000 in a corporation, one-half interest in which belongs to him. It earned a surplus of $13,000 the year before the hearing in his cause making him an income of $6,500. Besides that amount Schiff has a salary of $10,000. This would make his total income the year before the hearing $16,500. The year the decree for alimony was entered, it appears that his income was $14,682.92. During the year before the hearing, Schiff and wife number two spent $26,800 for living expenses. He and wife number two are also spending $2,300 annually for an apartment.
In the light of this rather terse expose of Schiff's economy, I see no reason for reduction in alimony payments. The overall picture has nothing to commend it. Misfortune or sharp decline in income is the criterion by which alimony payments may be reduced; $26,800 for one year's living looks like luxurious living to most of us. Schiff seems to think he should be permitted to squeeze some of it from the old wife's alimony, despite the fact that the late allowance to her is less than he and wife number two pay for lodging. A Court of Equity cannot function on any such provender. When wife number one has the equities in her favor shown here she is entitled to an orchid every time wife two gets one and Schiff cannot take bread from wife one to pay for wife two's orchid. One who deliberately takes on himself the pleasure of supporting two wives, both of whom are shown to have been faithful, should not in Equity be permitted to welsh on his agreement.
I think our former judgment of affirmance should be receded from and the judgment appealed from reversed.
Reversed.
SEBRING, C.J., and THOMAS and HOBSON, JJ., concur.