190 So.2d 42 (1966)
Henry GREEN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 6828.
District Court of Appeal of Florida. Second District.
September 7, 1966.
*43 Robert E. Jagger, Public Defender, and Robert E. Pyle, Asst. Public Defender, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
This is an appeal by Henry Green, Jr., from a judgment of conviction entered against him upon a jury verdict finding him guilty under an information filed in the Pinellas County Circuit Court charging him with robbery at gun point of one Hiram Sharp.
From the judgment and sentence imposed defendant Green assigns numerous errors, only one of which deserves serious consideration, namely, the propriety of allowing the testimony of a State witness, Allie Mae Smith, to go to the jury over objection of defendant.
The robbery occurred on November 13th, 1964, at about 7 o'clock P.M. at the Seven-Eleven Food Store, located on 78th Avenue in St. Petersburg. The Assistant Manager of the store, Hiram C. Sharp, Jr., was sweeping up in the aisle of the store with his back to the front entrance, when two colored men came in, walked up behind him, and asked him if he had any beer. Sharp straightened up and indicated where the beverage could be found in the store, at which time one of the colored men stuck a gun in his back and said "this is a stick-up, I don't want any trouble, I will blow your head off". Sharp then proceeded to turn over the contents of the cash register and a small safe on the floor to the men, amounting to a little over $214.00. The men thereupon turned around and walked out of the store side by side and disappeared. At the time they entered no one else was inside the store except Sharp, but while they were inside and before they left a customer, James S. Wegner, entered and after walking around the store noticed Henry Green standing at the end of the counter looking out in front of the store. He then noticed the other negro standing at the cash register with Mr. Sharp. Immediately afterward, when he went to pay *44 his bill, Wegner saw the cash registers were open and then ascertained, in conversation with Sharp, that the robbery had just occurred. The two negroes had just left the store. Wegner positively identified the defendant Henry Green as being the negro who had been watching out the front door.[1]
Allie Mae Smith, a 16 year old girl, who had known Henry Green for about five years, went to see Green at the County Jail while he was awaiting trial, and had a short conversation with him. Her occupancy of the witness stand was punctuated by repeated objections and arguments between counsel and continual haranguing and colloquys between counsel and the Court, all of which tended to incredibly slow up the pace of the trial, and has rendered difficult a coherent reading of what actually took place. She was brought on as a witness to narrate the substance of her conversation with Green at the jail, and ostensibly to quote statements from Green that would implicate him in the Seven-Eleven robbery upon which he was on trial.
But after all the clashes and acrimony of counsel and indulgences of the Court that marked her tenure as a witness, and the fragmentary shambles of her testimony could be analyzed, all that had been accomplished was to infect an otherwise orderly criminal prosecution with fatal error. The substance of her testimony, as gleaned from the morass of extra-testimonial bickerings attendant upon the proceedings, was that she had read a newspaper article in the Clearwater Sun "about Henry Green * * * about money being stolen * * * from the Seven-Eleven".
The following excerpts from the record refer to the conversation:
"Q Who was present when you were talking to Henry?
A No one.
Q Just the two of you?
A Yes.
Q All right, what did you say to him and what did he say to you?
A Well, I asked him where did he go. He said he went to Miami or Georgia, one of them. And I asked him how did he get there. He said with Leroy in the white Oldsmobile. And I told him people out where I live was accusing me of being with them when that happened.
Q When what happened?
A When he was being accused of money being stolen.
Q All right, what did he say?
A He said that he was going to punish them, or something like that. Made some kind of remark.
Q All right, go ahead. What else did you talk about? Did you ask him anything about the money?
* * * * * *
A That's all I know."
The newspaper article in question was never introduced or offered in evidence, it was not otherwise identified, and the contents of the article were not otherwise disclosed except as aforesaid. Allie Mae did not have the article with her when she was at the jail or at the trial, although she had been interrogated by the prosecutors just prior to trial. It is obvious from her testimony that both the news article itself and her conversation with Green at the jail related to a robbery of a Seven-Eleven Store with money being taken. It is equally obvious, however, that the robbery was never identified as this particular robbery for which Green was on trial. The trial Judge, after such testimony was already in, apparently decided to strike Allie Mae's testimony, observing that 

*45 "* * * after having thought about this particular case that is before me I would have to strike all the testimony of Allie Mae Smith, because it is my opinion that I should strike it and so inform the jury. * * * It is my opinion, though, that it would be actually harmful error with the mistake that I had made,[1a] and it is my further opinion that Allie Mae Smith's testimony when I think about it, most of it is immaterial. In fact, in my opinion all of it is immaterial, and it is almost impossible to pick out what is not and what is material. In fact it is my opinion that most of it is immaterial. Therefore I would grant the motion for a directed verdict at this time based on the case as it now appears."
However, during the ensuing wrangling of counsel, with the Court participating therein, the Judge apparently changed his mind and, after letting the prosecutor put Allie Mae back on the witness stand but adducing nothing additional from her of any consequence, denied successive motions to strike the various portions of her testimony. The case then went to the jury, resulting in the verdict of guilty as aforesaid.
For decades in Florida  in fact since 1886[2]  convictions have been reversed because of admission of evidence of other offenses wholly independent of the case being tried. Such evidence must be excluded if it has no direct bearing in proof of the instant case and where the only probative value is to prove or tend to prove a wholly extraneous offense. Hooper v. State, Fla.App. 1959, 115 So.2d 769; Hartman v. State, 1936, 121 Fla. 627, 164 So. 354; Rhodes v. State, 1932, 104 Fla. 520, 140 So. 309; West v. State, 1939, 140 Fla. 421, 191 So. 771; Adams v. State, 1943, 153 Fla. 68, 13 So.2d 610. And this is true even though the offenses are similar or of like nature. Denton v. State, 1913, 66 Fla. 87, 62 So. 914; Suarez v. State, 95 Fla. 42, 115 So. 519; Boyett v. State, 1928, 95 Fla. 597, 116 So. 476; Varnum v. State, 1939, 137 Fla. 438, 188 So. 346; Padgett v. State, Fla. 1951, 53 So.2d 106; Fastow v. State, Fla. 1951, 54 So.2d 110; Smith v. State, Fla. 1951, 54 So.2d 37. Likewise, any evidence that has no more attributes of admissibility than to merely suggest, or tend to suggest, commission of an independent crime, goes out. Wilson v. State, Fla.App. 1965, 171 So.2d 903; Andrews v. State, Fla.App. 1965, 172 So.2d 505.
In 1959 the Supreme Court, in Williams v. State, Fla. 1959, 110 So.2d 654, in a well-publicized opinion by Chief Justice Thornal, presumed to put a "new look" on such extraneous-offenses evidence, or at least to chart a new "legal approach" to such evidence. Up until Williams the inadmissibility of such evidence had been intermittently referred to in the cases as "the general rule", while the instances of admissibility had been variously described as "the exceptions". The Williams case took the old package out of tinfoil and wrapped it up in neat, modern cellophane by announcing that the admission of such evidence would be thenceforth "the general rule" and the non-admission would be "the exception". Thus, by a sort of reverse English the rule of relevancy has now supplanted the rule of exclusion. And it is to the credit of our Supreme Court that this new approach was announced. Because it is as it should be. Admissibility should always be favored if legally permissible. Exclusion should never *46 be resorted to unless legally necessary. The contrast between hearsay and res gestae is a classic example. Hearsay, now the exclusionary rule, should be the exception. Res gestae, now the admissibility exception, should be the rule  if and when, of course, it is applicable. See Williams v. State, Fla. App., 188 So.2d 320, opinion filed June 24, 1966.
Fundamentally, however, as we read Williams, the essential characteristics of evidentiary admissibility have not been materially altered. Evidence of other offenses which was admissible before Williams has been generally held admissible since Williams, and will undoubtedly continue so to be held in the future; and vice versa as to inadmissibility.
We analyze Williams to mean that evidence of other offenses is admissible if 
 it is relevant and has probative value in proof of the instant case or some material fact or facts in issue in the instant case; and
 its sole purpose is not to show the bad character of the accused; and
 its sole purpose is not to show the propensity of the accused to commit the instant crime charged; and
 its admission is not precluded by some other specific exception or rule of exclusion.
Thus, evidence would now be admissible as meeting the foregoing tests flowing from Williams which, prior to Williams, was held admissible under one or more of the then recognized exceptions to the then general rule of exclusion. Examples are: where such evidence of another or similar crime is admissible to prove identity, Thomas v. State, 1938, 132 Fla. 78, 181 So. 337; Kennedy v. State, 1939, 140 Fla. 124, 191 So. 193; Licht v. State, Fla.App. 1963, 148 So.2d 295; or to prove motive, pattern or intent, Hutchinson v. State, Fla.App. 1958, 102 So.2d 44; Shargaa v. State, Fla. 1958, 102 So.2d 814; or to show a common scheme or design, Talley v. State, 1948, 160 Fla. 593, 36 So.2d 201; or to show guilty knowledge, Langford v. State, 1894, 33 Fla. 233, 14 So. 815; or where it is impossible to give a complete or intelligent account of the crime charged without referring to the other crime, Nickels v. State, 1925, 90 Fla. 659, 106 So. 479; or where it is part of the res gestae, Kennedy v. State, 1939, 140 Fla. 124, 191 So. 193; or where it tends to disprove a defense of alibi, Thomas v. State, 1938, 132 Fla. 78, 181 So. 337; or to disprove unlawful entrapment, Ybor v. United States, 5 Cir.1929, 31 F.2d 42; or to disprove a defense of accident, mistake or inadvertence, Andrews v. State, Fla. App. 1965, 172 So.2d 505; Talley v. State, supra. Evidence tending to prove the various foregoing elements was held to render admissible as exceptions evidence of independent crimes in the respective cases cited, and such evidence would undoubtedly meet the tests now prescribed for relevancy in Williams.
The adjudicated cases since Williams involving admissibility of such evidence have shown a pattern of disposition quite consistent with disposition of similar cases prior to Williams. Thus, where collateral crime or "similar fact" evidence has been held admissible, such as in Mackiewicz v. State, Fla. 1959, 114 So.2d 684; Johnson v. State, Fla. 1961, 130 So.2d 599; Reddish v. State, Fla. 1964, 167 So.2d 858; San Fratello v. State, Fla.App. 1963, 154 So.2d 327; Bell v. State, Fla.App. 1965, 178 So.2d 131; like disposition would have undoubtedly been reached prior to Williams. And by the same token, where collateral crime or "similar fact" evidence has been held inadmissible, such as in Norris v. State, Fla. App. 1963, 158 So.2d 803; State v. Norris, Fla. 1964, 168 So.2d 541; Williams v. State, Fla. 1962, 143 So.2d 484; Jordan v. State, Fla.App. 1965, 171 So.2d 418; Hooper v. State, supra; cf. Swain v. State, Fla.App. 1965, 172 So.2d 3; it would undoubtedly have been held inadmissible prior to Williams.
*47 The same line of demarcation between admissibility and non-admissibility of such "similar fact" evidence applies with equal force where the evidence of the collateral and unconnected crime derives from previous statements of defendant, as here. See Minturn v. State, Fla.App. 1962, 136 So.2d 359; Hooper v. State, Fla.App. 1959, 115 So.2d 769; Moseley v. State, Fla. 1952, 60 So.2d 167. The argument for inadmissibility is, in fact, more cogent.
From all the foregoing, it is clearly evident from the record before us that the evidence of Allie Mae Smith detailing her conversation with defendant Green with reference to the robbery of a Seven-Eleven Food Store, not otherwise identified as being the store or the robbery involved in the case on trial, was not relevant to prove any fact or facts in issue before the jury, and its sole purpose and effect could only have been to show the bad character of the defendant when he had not put his character into evidence, and his propensity for committing the robbery in question.
The oft-quoted observation of Mr. Justice Cordoza, in Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196, is pertinent:
"It is for ordinary minds, and not for phychoanalysts, that our rules of evidence are framed. They have their source very often in considerations of administrative convenience, of practical expediency, and not in rules of logic. When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out."
From all the foregoing, it necessarily follows that, because of the improper admission of the testimony of Allie Mae Smith, the judgment and sentence appealed from must be reversed.
Reversed and remanded.
HOBSON, Acting C.J., and SILVERTOOTH, LYNN N., Associate Judge, concur.
NOTES
[1] Green and Whiting were informed against jointly but were tried separately, and the instant appeal is from the separate trial of Green. Whiting was likewise convicted.
[1a] After Allie Mae Smith had testified at length, counsel argued motions in Chambers, after which the Court called the jury back and stated: "Gentlemen of the jury, this witness (Smith) has testified earlier, and in turn I mislead or rather misquoted what she said earlier. It was my recollection that she said she had money, or rather the money was used to go to Miami or Georgia in an Oldsmobile. Please disregard what I said about that. * * * Because I am sure that it was misleading to have me quote what she did not say."
[2] Selph v. State, Fla. 1886, 22 Fla. 537; Mann v. State, Fla. 1886, 22 Fla. 600.