RIVKIND, LEONARD, Associate Judge,
specially concurring in Case No. 78-1693 and dissenting in Case No. 78-1638.
Case No. 78-1693
I concur in the affirmance of the conviction for direct criminal contempt. Appellant was removed from the courtroom for disruptive conduct after repeated warnings by the trial judge. See Illinois v. Alien, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Electronic equipment was installed in a room adjacent to the courtroom in order that appellant could hear the proceedings while the trial for armed robbery continued. See Florida Rule of Criminal Procedure 3.180(b). At the conclusion of the trial the court held appellant in direct criminal contempt for his disruptive conduct committed in the presence of the court. *673 Appellant contends (1) the judgment of contempt does not contain a sufficient recital of facts upon which it is based and (2) the contempt hearing should have been conducted before another judge. The record reflects strict compliance with Florida Rule of Criminal Procedure 3.830 including sufficient findings in the judgment of contempt. Regarding appellant’s second point, there is no requirement for disqualification of trial judges in cases of direct criminal contempt albeit the hearing is held at a later time rather than contemporaneous with the event. This is especially so where the trial judge does not become “personally embroiled” with a contemner. See Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977). While appellant was guilty of disruptive conduct during the trial, there was no personal affront to the court nor did the trial judge become personally embroiled with appellant. There is nothing in this record to show disqualification and a judgment of contempt is clothed with a presumption of correctness. Belote v. Slye, 206 So.2d 276 (Fla. 1st DCA 1968).
Case No. 78-1638
I respectfully dissent. Appellant should receive a new trial on the armed robbery charge because of the use of “Williams rule” evidence. See Williams v. State, 110 So.2d 654 (Fla.1959). Appellant was convicted for armed robbery the second time around. The first trial ended in a hung jury. During the second trial the State was allowed to introduce, over objection, evidence that appellant had participated in a burglary of a residence in Belle Glade on the same day of the armed robbery. The trial court permitted this evidence to rebut an “alibi defense” arising from the testimony of the sole defense witness, Betty Jean Motley. The robbery was committed in Belle Glade on May 10, 1977. Ms. Motley’s testimony as to that date was:
DIRECT TESTIMONY
Q. Now, we are here today concerning charges against your brother, robbery charges, robbery that occurred on May 10, 1977. To your knowledge, was your brother, James Ingram, living in Belle Glade at that time?
A. No, he wasn’t.
Q. Okay. And when was the last time that he lived in Belle Glade?
A. On about the second or third week of April, 1977.
Transcript 110
* * * * sfc sfc
Q. All right. When was the last time you had seen your brother there in Belle Glade at your mother’s home? A. April of 1977.
Transcript 112
* * * * * *
Q. I think you indicated that your brother had left Belle Glade. Do you know where he went at that time? A. He was leaving to go to Crestview, Florida.
* * * * * *
Q. When did, after he left, when did you next see your brother?
A. In August of 1977.
Q. Where was that?
A. In Belle Glade.
Transcript 113
CROSS-EXAMINATION
Q. Miss Motley, how far is it from Belle Glade to Crestview, Florida?
A. I don’t know.
Q. Never been there before?
A. I have been through there, but I have never been there.
Transcript 114
Q. Has your brother ever come to Belle Glade while your brother was living in West Palm Beach or in Riviera Beach?
A. Uh-huh.
Q. Did he come to visit you frequently in Belle Glade?
A. Yes.
Transcript 115
*674 Q. Would you say once a week?
A. No.
Q. Twice a week?
A. No. No. About every other week or so.
Q. And when he came back from wherever he had been in August, 1977, he popped in for a couple of hours?
A. Beg your pardon.
Q. He came by your house, and stayed a couple of hours?
A. Yes.
Q. All right. Then he left. Did he leave Belle Glade, as far as you know?
A. As far as I know, yes.
Q. Uh-huh. Did you have any contact with your brother in May, 1977, at all?
A. Yes. He would call from Crestview.
Q. Call long distance?
A. Yes, he would.
Transcript 116
* * * * * *
The foregoing is the sum and substance of the “alibi” testimony. The only witness who identified appellant as the robber was Tom Williams, a customer in the convenience store during the robbery, who was acquainted with appellant and his family.[1] Mr. Williams testified he had spoken to appellant two days prior to the robbery at appellant’s grandmother’s house in Belle Glade and that he believed Ms. Motley was inside the house at the time. Williams was the only witness who had identified appellant as the robber at the first trial. The burglary was an extra-added attraction to the State’s case at the second trial.
Defense counsel specifically objected to the introduction of testimony of a burglary which was unconnected with the instant offense. Counsel contends here as he did in the trial court[2] that Ms. Motley’s testimony was not for the purpose of establishing an alibi but was to attack Mr. Williams’ credibility concerning his alleged contact with appellant during this period of time and his ability to recognize and identify appellant. Counsel for appellant further argued he had not filed a notice of alibi. See Florida Rule of Criminal Procedure 3.200.
At no time did any defense witness testify to appellant’s whereabouts on the date or at the time of the robbery. At no time did the appellant’s whereabouts on the date of the offense become a contested issue of fact before the jury.
I do not believe Ms. Motley’s testimony “opened the door” to the admission of evidence concerning the burglary and I believe that its introduction was contrary to the principles of law established by Williams v. State, supra, and its progeny. If the State believed that Ms. Motley’s testimony was to establish an alibi, it could have raised an objection because of non-compliance with Rule 3.200 and the trial judge could have excluded any alibi testimony. Chester v. State, 276 So.2d 76 (Fla. 2d DCA 1973); Cox v. State, 219 So.2d 762 (Fla. 3d DCA 1969). If Ms. Motley’s testimony can be characterized as alibi evidence its probative value is a “riddle wrapped in a mystery inside an enigma”. There was no necessity or justification to allow rebuttal evidence of an unconnected burglary. There was simply no alibi to rebut. The evidence tending to show that appellant was guilty of a burglary on the same date, a charge not covered in the information, could only have the effect of leading to the conclusion that appellant is a person likely from his criminal conduct or character to have committed the armed robbery for which he was being tried. The test is relevancy. “If found to be relevant for any purpose save that of showing bad character or propensity, then it [evidence of collateral crimes] should be admitted”. Williams v. State, 110 So.2d 654, 662 (Fla.1959). (bracketed material *675 supplied). The Williams Court also stated: “The matter of relevancy should be carefully and continuously considered by the trial judge.” 110 So.2d at 663. The Williams rule was thoroughly analyzed in Green v. State, 190 So.2d 42, 46 (Fla. 2d DCA 1966), where the court stated:
We analyze Williams to mean that evidence of other offenses is admissible if—
—it is relevant and has probative value in proof of the instant case or some material fact or facts in issue in the instant case; and
—its sole purpose is not to show the bad character of the accused; and
—its sole purpose is not to show the propensity of the accused to commit the instant crime charged; and
—-its admission is not precluded by some other specific exception or rule of exclusion.
There are only two reported cases in Florida in which- Williams rule evidence was used to rebut an alibi defense. One such case is Thomas v. State, 132 Fla. 78, 181 So. 337 (1938), and the other is Hannah v. State, 356 So.2d 1340 (Fla. 3d DCA 1978). In Thomas, the Supreme Court affirmed the trial court’s admission of evidence of defendant’s participation in another robbery where defendant, several neighbors and friends testified defendant was a mile or so from the scene at the time in question. In Hannah the court found evidence of a collateral crime was relevant to a claimed alibi. The defendant had offered testimony that he was out of the State during a certain material time or period. A witness for the State testified that defendant participated in a robbery of his store on a date within said period. In Thomas and Hannah the relevancy was demonstrated. In the instant case Ms. Motley never testified that appellant was not or could not have been in Belle Glade at the time of the robbery. Her testimony is a far cry from an alibi defense.
No limiting instruction to the jury was given in the case sub judice either at the introduction of the evidence of a collateral crime or in the court’s final instructions. I might add that none was requested.[3] In Green v. State, 228 So.2d 397, 398 & 399 (Fla. 2d DCA 1969) the court stated:
The testimony as to the prior crime was not commensurate with that concerning the crime in the instant case in view of the fact that at the introduction of that evidence no limiting instruction was given. Since the record fails to show it, perhaps none was given for the jury to consider. In any event, a limiting instruction as to the use of that testimony should have been given when such evidence was introduced. See Roberson v. State, 1898, 40 Fla. 509, 24 So. 474. In itself the mere volume of testimony concerning the prior crime would not necessarily make it a “feature” in the second case. However, when considered with the additional fact that no limiting instruction was given, the prior crime could well become a “feature instead of an incident” of the instant case in the jury’s mind. They could not be expected to know for what limited purpose the evidence of the prior crime was admitted.
I believe the evidence of a burglary became a “feature instead of an incident” of the instant case particularly when the jury was not told the reason for the admission of the collateral crime.
*676 This court in Marion v. State, 287 So.2d 419, 421 (Fla. 4th DCA 1974) cautioned against use of Williams rule evidence unless it has substantial relevancy. The court stated:
. We cannot help but express our profound concern about the increasing reliance upon similar fact evidence in circumstances where such evidence has, at the most, “borderline relevancy”.
The later cases exclude evidence of other criminal acts unless the evidence is substantially relevant for some other purpose than that of bad character or criminal propensity. McCormick on Evidence, § 190. The author states:
Accordingly, some of the wiser opinions (especially recent ones) recognize that the problem is not merely one of pigeon-holing, but one of balancing, on the one side, the actual need for the other — crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other— crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.
At page 453.
I recognize that the question of admissibility of this type of evidence is left to the sound discretion of the trial judge but it does not mean that the trial court’s decision is immune from review. United States v. Fierson, 419 F.2d 1020 (7th Cir. 1969). The trial court must balance its tendency to unduly prejudice the accused against its tendency to prove a material fact. United States v. Phillips, 401 F.2d 301 (7th Cir. 1968). I have not overlooked nor do I believe it makes any difference that at the charge conference the appellant “requested” [4] an alibi instruction which was given in the court’s final instructions to the jury. See United States v. Fierson, 419 F.2d 1020 (7th Cir. 1969).
*677 In the case sub judice the probative value of the evidence concerning the collateral crime of burglary is greatly outweighed by its prejudicial effect and I believe its admission constitutes an abuse of discretion. The use of Williams rule evidence under these circumstances constitutes unfair surprise, confusion of issues and undue prejudice. If evidence of the unconnected crime of burglary has a “peg of relevance” then I submit it is “entirely obscured by the dirty linen hung around it.”[5] I would reverse and remand for a new trial.

. Mr. Williams failed to identify appellant as the robber during the investigation at the scene. He explained later that he was reluctant to identify appellant because he “hated to, you know, be the one that pinned it on him. . .".

. See footnote 4 infra.

. I do not suggest that, standing alone, the failure to give a limiting instruction, when not requested, would require a reversal. The Florida Evidence Code (not applicable to the instant case) provides: “2. When the evidence [other crimes] is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received, and that the defendant cannot be convicted for a charge not included in the indictment or information.” 90.404(2)(b)(2). (Bracketed material and emphasis supplied). It should be noted that the Code which provides for a limiting instruction when the evidence is admitted, if requested, further provides for such instruction at the close of the evidence but omits the words “if requested”. In both instances the mandatory “shall” is employed.

. The Court: “ . All right. Now, getting back to the Court’s instructions on the law, previously when we tried this case we had a charge conference. Can we go by those same instructions, but in this case including the instructions on alibi?
Defense Counsel: I don’t know technically whether it’s an alibi or not.
The Court: Well, if you don’t want me to charge them on it I will not do it, but he’s called a woman whom I believe has testified that said he was in Crestview, Florida, at the time of this alleged offense, for whatever it’s worth.
Defense Counsel: She didn’t say that, your Honor.
The Court: No, I mean she just said he wasn’t in the Belle Glade area at the time of the, of the alleged robbery.
Defense Counsel: To her knowledge.
The Court: To her knowledge, but if you don’t want me to charge them on alibi, I won’t charge them. But if they believe her testimony or if her testimony creates a reasonable doubt in their mind, then, of course, they can acquit him. They don’t have to find that he was in fact in Crestview. Only that he was not in Belle Glade at the time of the alleged robbery.
Defense Counsel: I guess it should be. I guess it should be instructed on, your Honor.
The Court: Have you seen the instructions on alibi? Do you have a copy?
Defense Counsel: Yes, your Honor. I was just thinking about it.
The Court: I’m not trying to put words in your mouth. What I’m trying to do is, see when we come back I would like to have as much of the charge conference behind us as possible. We have already been through this to some extent.
Defense Counsel: Well, the regular instructions, your Honor, says one of the defenses in this case is alibi, that is to say, that at the time of the alleged crime the defendant was not at the place of the crime.
The Court: Right.
Defense Counsel: And actually her testimony is not that, your Honor.
The Court: Yeah, right.
Defense Counsel: Her testimony really is that, as far as it goes, more to whether Tom Williams saw him during this period of time. Goes to his credibility than it does alibi. She really didn’t say he wasn’t there.
The Court: Right. I understand. So you do not want me to charge them on alibi; your defense is mistaken identity in other words? Defense Counsel: I guess it should be instructed on, your Honor, because there is enough there.
The Court: So you want me to charge them on alibi?
Defense Counsel: Yes, your Honor.
Transcript 123-125

. United States v. Bradwell, 388 F.2d 619, 622 (2d Cir. 1968), citing State v. Goebel, 36 Wash.2d 367, 379, 218 P.2d 300, 306 (1950).